Jesse WHITE, d/b/a Bill's Salvage Yard, Appellant,

v.

CITY OF DALLAS et al., Appellees.

No. 18410.

Court of Civil Appeals of Texas, Dallas.

Dec. 12, 1974.

Herbert H. Landau, Landau & Goolsby, Dallas, for appellant.

N. Alex Bickley, City Atty., Ted P. MacMaster, Asst. City Atty., Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Jesse White, doing business as Bill's Salvage Yard, appeals from a judgment of the district court which upholds action by the Board of Adjustment of the City of Dallas in ordering cessation of nonconforming use of property leased by appellant in a residential area in the city of Dallas. We affirm.

The property involved in this litigation consists of two tracts of land located on Skillman Avenue. Appellant White, since 1960, has operated an automobile wrecking yard on the property. Improvements on the property consist of three small buildings, one being a portable metal-covered structure used as an office. The total tax value of the three structures is $1,060 and the replacement value is $1,950. Mr. White is not the owner of the property in question but has a lease from the owners. The evidence is somewhat conflicting as to the exact time when the property was first used as an automobile wrecking yard. There is some evidence that automobiles were stored on one tract of land and that a wrecking yard was started on the other tract of land in 1956. There was evidence that neither tract was used for business purposes prior to the time that Skillman Avenue was open to traffic in 1954 or

1956. Mrs. Blessing, a realtor and a former member of the Dallas City Council, testified that she had been familiar with the area for a long period of time and that "since about 1950 there has been something there to distract from the appearance of the property."

The City of Dallas began annexation proceedings on July 17, 1951, with first reading of an ordinance covering the property involved, and on October 1, 1956, the Dallas City Council held the second reading and called for a hearing on the 5th day of November 1956, concerning the annexation of the area in question. Annexation was completed on February 17, 1958, with the passage of Ordinance 7562. The property was zoned residential.

On May 9, 1972, property owners in the general vicinity of the wrecking yard filed a petition with the Board of Adjustment of the City of Dallas pursuant to the provisions of Comprehensive Zoning Ordinance 10962, as amended, to terminate the nonconforming use covering the property in question. The property owners also asserted that the operation of the wrecking yard was a nuisance. The Board of Adjustment was asked to take legal action in order to eliminate the nonconforming use so that the use of the property will conform to the residential use. The Board of Adjustment called a public hearing on September 19, 1972, in accordance with the provisions of Sections 28 and 29 of the Zoning Ordinance. Hearing was had and evidence presented following which, on October 17, 1972, the Board entered its order to terminate the nonconforming use, if such existed. The Board ordered the nonconforming use to be terminated not later than September 30, 1973.

Appellant White filed an application for writ of certiorari, which was granted, and the case was docketed for trial in the district court of Dallas County. Following a nonjury trial, judgment was rendered on March 22, 1974, sustaining the action of

the Board of Adjustment and it is from this order that White appeals.

In his first point of error appellant challenges the jurisdiction of the Board of Adjustment of the City of Dallas to initially hear and determine the question of nonconforming use of the property involved. He argues under this point that pursuant to Vernon's Tex.Rev.Civ.Stat.Ann. art. 1011g (Supp.1974), the authority of the Board of Adjustment of the City of Dallas, a home-rule city, is limited and restricted to hearing and deciding appeals made by an administrative official in the enforcement of any ordinance adopted by the City. He contends that the City of Dallas was without authority to extend to the Board of Adjustment authority to initially hear and determine questions relating to nonconforming use. We cannot agree with appellant.

The authority of the Board of Adjustment to hear and determine initially the issue of discontinuance of a nonconforming use is specifically granted by the provisions of the Comprehensive Zoning Ordinance of the City of Dallas (Ordinance 10962, as amended), Section 29–701. It is therein provided that when in its judgment, the public convenience and welfare will be substantially served, the Board of Adjustment may, in specific cases, after public notice and hearing, take action relative to the questions of nonconforming use. Other sections of the Ordinance contained definitions of nonconforming uses and a declaration of public policy for discontinuance of nonconforming use.

■■■ The City of Dallas is a home-rule city possessed with all of the authority of self-government which is expressly provided for by Vernon's Ann.Tex.Const. art. XI, § 5. This home-rule amendment to the Constitution has been construed frequently by the courts of this state to grant cities having more than five thousand population full and complete power of self-government, and with authority to do anything

that the Legislature could theretofore have authorized them to do. The courts have upheld the validity of the zoning statutes of home-rule cities as valid exercise of police power. This is true even though the City might prohibit certain services from being operated within the limits of the city or within a particular section of the city. Such police power is validly exerted to regulate the use, and where appropriate or necessary, to prohibit the use, of property for certain purposes in aid of the public health, morals, safety, and general welfare, where the exercise of power is reasonable and bears a fair relationship to the object sought to be attained. City of University Park v. Benners, 485 S.W.2d 773 (Tex. 1972), appeal dismissed, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973); City of Bellaire v. Lamkin, 159 Tex. 141, 317 S. W.2d 43 (1958); City of San Antonio v. Pigeonhole Parking, 158 Tex. 318, 311 S. W.2d 218 (1958); Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); and Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934).

■ As stated by the Supreme Court in Forwood v. City of Taylor, *supra*, in view of this broad grant of power to home-rule cities it is only necessary to look to the acts of the Legislature for limitations on said powers. Yellow Cab Transit Co., Inc. v. Tuck, 115 S.W.2d 455 (Tex.Civ.App.— Dallas 1938, writ ref'd). An examination of the statutes with respect to zoning authority reveals that the only restriction cast upon home-rule cities is found in Tex.Rev.Civ.Stat. art. 1011c (Vernon 1963), which expressly prohibits cities from removal or destruction of property, existing at the time such city takes advantage of the act, which property is actually and necessarily used in a public service business. In this case no contention is made that appellant's property is a "public service business."

■ While it is true that Tex.Rev.Civ. Stat.Ann. art. 1011g (Supp.1974) provides that boards of adjustment shall have au-

thority "to hear and decide appeals" we construe this to be a specific grant of authority in such cases, not as a prohibition by the Legislature for such boards of adjustment to hear such matters initially if granted such right by the city council. Under these circumstances we see no reason to apply the principle of *expressio unius est exclusio alterius*. (The mention of one is the exclusion of the other.)

In Board of Adjustment v. Underwood, 332 S.W.2d 583 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.), the court held that the Board of Adjustment could validly make an original decision when called upon to do so, subject to review by the court. *See also* 101 C.J.S. Zoning § 209 (1958), and 2 A. Rathkopf, The Law of Zoning and Planning 50–1 (3d ed. 1956).

■ Accordingly, we conclude and so hold that the delegation of authority from the City of Dallas to its Board of Adjustment to pass upon and decide the questions presented, initially subject to review by the courts, is a valid exercise of police power within the broad legislative power possessed by all home-rule cities.

In his second, third, and fourth points of error appellant contends that the wrecking yard now operated by him existed prior to annexation of the property by the City of Dallas and therefore, a nonconforming use attached which could not be legally abolished by order of the Board of Adjustment. He then argues that if the order of the Board of Adjustment is valid, which he denies, then such order was not supported by the evidence and was arbitrary, capricious, and unreasonable. We cannot agree with appellant on any of these contentions and overrule the same.

■ The case was tried before the court without a jury, and no findings of fact or conclusions of law were requested or filed. We must, therefore, affirm the judgment of the trial court upon any theory finding support in the record. As we said in Jacobson v. Preston Forest Shop-

ping Center, Inc., 359 S.W.2d 156 (Tex. Civ.App.—Dallas 1962, writ ref'd n. r. e.), the question on appeal from an order of the Board of Adjustment is whether or not there is any substantial evidence affording reasonable support for the findings and order entered by the Board. This is a question of law, not of fact. If the evidence before the court, as a whole, is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action, then the order must be sustained.

The trial court recited in its judgment that annexation proceedings were instituted to annex said property involved to the city of Dallas prior to the time the property owned by White was ever used for an automobile wrecking yard. The record reveals that the Dallas City Council initiated Ordinances 3150 and 50–3151, annexing the property in question, by first reading on July 17, 1951. The property was finally annexed at a later date. At the hearing before the Board of Adjustment the City introduced evidence in the form of aerial photographs taken of the property in question on March 21, 1951, which photographs did not reveal any wrecking yards in the area involved. There was also testimony from one of the owners of the property that the wrecking yard was not started on the property until about 1956. Another witness testified that the first automobiles of any kind were placed on the property in approximately 1957 and 1958. White acquired the wrecking yard in 1960. The only evidence appearing in the record suggesting that a wrecking yard existed prior to 1951 came from Mrs. Blessing who, as stated previously, said that "since 1950 there was something there to distract from the appearance of the property."

The cases are in accord in holding that when an ordinance of a city is passed on first reading jurisdiction of the city attaches to the property regarding the future use thereof. Westwood Dev. Co. v. City of Abilene, 273 S.W.2d 652 (Tex.Civ. App.—Eastland 1954, writ ref'd n. r. e.) ; City of Dallas v. Meserole Bros., 164 S. W.2d 564 (Tex.Civ.App.—Dallas 1942, writ ref'd w. o. m.) ; and City of Dallas v. Meserole, 155 S.W.2d 1019 (Tex.Civ.App. —Dallas 1941, writ ref'd w. o. m.). Thus when the City of Dallas passed the ordinance on first reading on July 17, 1951, the City of Dallas acquired jurisdiction concerning the future use of the property. Our review of the record convinces us that there is ample evidence to support the decision of the Board of Adjustment as well as the judgment of the trial court to the effect that the property had not been used as a wrecking yard prior to the first reading of the annexation ordinance of 1951. Such being true the City was vested with authority under the general zoning ordinances to control the use of the property.

However, we need not rest the affirmance of the trial court's judgment on this finding because even if the property had been used as a wrecking yard prior to 1951, the nonconforming use could be ordered discontinued. The City of Dallas has announced its policy concerning discontinuance of nonconforming use in its Comprehensive Zoning Ordinance 10962, as amended, and Sections 29–701(d) and 29–701(e), as well as Sections 28–400 and 28–420, et seq. These provisions of the City Code require the discontinuance of a nonconforming use under its plan whereby full value of the structure can be amortized within a definite period of time, taking into consideration the general character of the neighborhood and the necessity for all property to conform to the regulations of the ordinance. The evidence before the court, as well as the Board, demonstrated that the operation of the car wrecking business detracted from the general use of the property in the neighborhood which had the result of depreciating the value of the property in the community. This evidence fully supported the action of the Board, as well as the court, in implementing the provisions of the zoning ordinance

ordering a discontinuance of nonconforming use.

█ It is now definitely established in Texas that municipal zoning ordinances which reasonably require the discontinuance of nonconforming uses are constitutional. City of University Park v. Benners, 485 S.W.2d 773 (Tex.1972), appeal dismissed, 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973); City of Garland v. Valley Oil Co., 482 S.W.2d 342 (Tex.Civ. App.—Dallas 1972, writ ref'd n. r. e.); Swain v. Board of Adjustment, 433 S.W.2d 727 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.), cert. denied, 396 U.S. 277, 90 S. Ct. 563, 24 L.Ed.2d 465 (1970); and City of Dallas v. Fifley, 359 S.W.2d 177 (Tex. Civ.App.—Dallas 1962, writ ref'd n. r. e.).

█ So, if we assume that the automobile wrecking yard business existed prior to the 1951 annexation, the question presented is whether the order of the Board of Adjustment requiring termination of the use of the property in one year's time was unreasonable and arbitrary and, therefore, beyond the police power of the City to restrict the use of the property in the interest of public health, safety, and general welfare. City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953). We hold that appellant has not shown that the order of the Board of Adjustment, or the judgment of the trial court, is unreasonable and arbitrary. When we view the record as a whole, we are convinced that there was ample evidence to support the trial court's judgment affirming the action of the Board of Adjustment in ordering cessation of the nonconforming use of the property in question. Moreover, the discontinuance of the business was not unreasonable in view of the undisputed evidence concerning the minimal value of the appellant's buildings located on the leased premises. The buildings, and other property located on the land in question was of such a nature as could obviously be removed during the twelve-month period. One year is a reasonable time within which appellant could have terminated the business without loss of investment.

Since the judgment of the trial court is amply supported by the record and follows well-established law concerning the right of a city to order discontinuance of nonconforming use as a part of its police power, we need not pass upon nor discuss appellant's contention concerning lack of evidence to support the findings of public nuisance.

The judgment of the trial court is affirmed.