**BOARD OF ADJUSTMENT OF THE CITY OF DALLAS, Texas, Appellant,**

v.

**Bobby J. WINKLES and Melba J. Winkles, Appellees.**

No. 05–91–00616–CV.

Court of Appeals of Texas, Dallas.

June 25, 1992.

Rehearing Denied Aug. 7, 1992.

Sally Field, Dallas, for appellant.

J. Stanley Knight, Dallas, for appellees.

Before BAKER, BURNETT and ROSENBERG, JJ.

## OPINION

BAKER, Justice.

The Board of Adjustment of the City of Dallas, Texas, (the Board) appeals the district court's judgment for Bobby J. and Melba J. Winkles (the Owners). The district court reversed the Board's order terminating the Owners' nonconforming landscape supply business. The Board contends that the district court erred in finding the Board's decision was not supported by substantial evidence of record. We reverse the trial court's judgment and render judgment for the Board.

## FACTUAL BACKGROUND

The Owners operated a mining and landscape supply business at 4111 Middlefield Road in Dallas County. The City annexed the property in April 1978. Upon annexation, the City zoned the property 'A,' restricting the property to agricultural use only. A City of Dallas Ordinance prevented any other use on property zoned 'A' unless the owner got a specific use permit authorizing other uses.

On August 29, 1978, the City issued Bobby Winkles a Certificate of Occupancy for the property for the wholesale and retail sale of dirt, gravel, rock, and sand. The CO noted that this use existed before the City's annexation of the property. The Owners continued to use the property for their mining and landscape supply business without a specific use permit. They applied for a specific use permit in September 1986. The City denied their application.

In 1987, the Board held a bifurcated hearing to determine whether the Owners had legal nonconforming rights to operate a mining and landscape supply business on the property. At the first hearing held on July 14, the Board terminated the Owners' nonconforming mining and landscape supply use rights. Upon recommendation by the Board's staff, the Board set April 30, 1988, for termination of the nonconforming use. The Board's staff reasoned that the termination date allowed the Owners enough time to move the materials and machinery to another site. The staff also concluded the Owners already had had ample time to recover their investment. A neighbor testified the Owners had two other properties where they could store materials and machinery.

The Board held a second hearing on August 25 to determine what value to amortize and the length of the amortization period. The Owners conceded that the removal costs of the business directly attributable to the termination date was controlling rather than the value of the structures since they would simply move the structures to another location.

Mrs. Winkles testified they had 17,150 yards of landscape supplies on the property.[1] Mrs. Winkles testified it would cost $106,813 to move the materials and machinery to another location. She stated this amount included: $84,000 to move the materials; $2400 to move two draglines and four loaders; $3000 to move the office; $2000 to change advertising, letterhead, and office materials; and $15,000 to dig up

---

1. A neighbor testified the Winkleses significantly increased their materials inventory within

seven days of the hearing date in August.

and replace the driveway and surface area. Mrs. Winkles testified further that in eighteen years' time the business profited $203,876.86, or an average of $11,325 per year.

Accepting the Owners' admission that the nonconforming use began before April 1978, the Board determined the amortization period should begin April 1978 but extended the termination date one year—to April 30, 1989. The Board concluded the amortization period beginning April 1978 and ending April 30, 1989, was reasonable, considering the Owners' investment. The Board also concluded that ending the nonconforming use was in the best interest of the surrounding community and consistent with the Dallas Development Code.

## STANDARDS OF REVIEW

### A. In the District Court

The substantial evidence rule is the proper standard for review of the Board's order in the district court. The district court must presume the Board's order is valid. The district court can only review the legality of the Board's order. The issue is whether the Board's order was an abuse of its discretion. *Nu–Way Emulsions, Inc. v. City of Dalworthington Gardens*, 617 S.W.2d 188, 189 (Tex.1981); *Murmur Corp. v. Board of Adjustment, City of Dallas*, 718 S.W.2d 790, 799 (Tex.App.— Dallas 1986, writ ref'd n.r.e.).

We must determine whether there is substantial evidence affording reasonable support for the Board's findings and order. This is a question of law, not of fact. *White v. City of Dallas*, 517 S.W.2d 344, 347–48 (Tex.Civ.App.—Dallas 1974, no writ); *Swain v. Board of Adjustment, City of University Park*, 433 S.W.2d 727, 730 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.), *cert. denied*, 397 U.S. 977, 90 S.Ct. 1085, 25 L.Ed.2d 274 (1970). The court must not substitute its discretion for the Board's, even if the court concludes the overwhelming preponderance of evidence is against the Board's decision. *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 70 (1945); *Murmur Corp.*, 718 S.W.2d at 799. If reasonable minds could have reached the conclusion the Board must have reached to justify its action, the trial court must uphold the Board's order. *City of San Angelo*, 190 S.W.2d at 70; *Murmur Corp.*, 718 S.W.2d at 799.

When the Board determines a fact, such as the amount of the Owners' investment in the nonconforming use, the record must contain substantial evidence to support that finding. *Swain*, 433 S.W.2d at 730; *Murmur Corp.*, 718 S.W.2d at 799. Because the Board is a quasi-judicial body, the court should uphold its order on any possible legal theory regardless of the reasons the Board gave for its decision. *Murmur Corp.*, 718 S.W.2d at 799; *City of Dallas v. Fifley*, 359 S.W.2d 177, 182 (Tex.Civ.App.— Dallas 1962, writ ref'd n.r.e.).

### B. Appellate Review

On appeal, we determine whether the trial court substituted its discretion for that of the Board. *Murmur Corp.*, 718 S.W.2d at 799. If the evidence before the Board would permit reasonable minds to reach the conclusion the Board must have reached to justify its action, the district court abuses its discretion if it does not uphold the Board's order. *City of San Angelo*, 190 S.W.2d at 70; *Swain*, 433 S.W.2d at 730.

## BURDENS OF PROOF

### A. Before the Board

■ Because the limitation of use in this case was by the Board's order on the City's application, there must be enough evidence to justify the Board's action. *Murmur Corp.*, 718 S.W.2d at 799. The absence or inadequacy of competent evidence to support the Board's decision is a ground for reversal. At the hearing before the Board, the City had the burden to present substantial evidence to support any fact finding necessary to support the Board's order. *Neighborhood Comm. on Lead Pollution v. Board of Adjustment, City of Dallas*, 728 S.W.2d 64, 68 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Murmur Corp.*, 718 S.W.2d at 799.

### B. Before the District Court

■ A party seeking relief from the Board's decision about a nonconforming use has the burden of showing illegality. *Huguley v. Board of Adjustment, City of Dallas,* 341 S.W.2d 212, 217 (Tex.Civ. App.—Dallas 1960, no writ). The owner satisfies its burden of showing the order is illegal or an abuse of discretion if it shows there is no evidence from which reasonable minds could have reached the conclusion the Board must have reached to justify its order. *Murmur Corp.,* 718 S.W.2d at 799.

### APPLICABLE LAW

■ A nonconforming use of land or buildings is a use that existed legally when the zoning restriction became effective and has continued to exist. *City of University Park v. Benners,* 485 S.W.2d 773, 777 (Tex. 1972), *appeal dismissed* 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973); *Swain,* 433 S.W.2d at 730.

■ A municipality's power to terminate existing property uses rendered nonconforming under zoning regulations is a valid exercise of the police power. *Benners,* 485 S.W.2d at 777–78. The reasonable use of the "amortization" technique is a valid exercise of a municipality's police power. *Benners,* 485 S.W.2d at 777.

■ The amortization technique must give the property owner an opportunity to recover its investment in the nonconforming structure or use at the time of the zoning change. *Benners,* 485 S.W.2d at 779; *Murmur Corp.* 718 S.W.2d at 797. The Board must measure reasonableness of the opportunity for recoupment by conditions at the time the existing use becomes nonconforming—not by conditions upon expiration of the tolerance. *Benners,* 485 S.W.2d at 779.

■ The property owner can only recoup the "full value" of the nonconforming structure or the nonconforming use. Full value of the structure means actual dollars invested in the nonconforming structure. Full value of the nonconforming use may include other costs such as the cost of removing a nonconforming structure and

setting up the business in a different location. *Murmur Corp.,* 718 S.W.2d at 795; *White,* 517 S.W.2d at 348–49.

■ A property owner may not extend the period of nonconforming use by replacements or improvements. This would allow the property owner to extend the nonconforming use indefinitely. *Neighborhood Comm. on Lead Pollution,* 728 S.W.2d at 70; *Murmur Corp.,* 718 S.W.2d at 796–97.

The reasonableness standard governs the measure of recoupment for amortization of a nonconforming structure or use. It requires only a reasonable opportunity to recoup the owner's actual investment in the nonconforming structure or use. It need allow nothing for appreciation of the value of land or improvements or for profit from an advantageous acquisition. *Murmur Corp.,* 718 S.W.2d at 798.

### APPLICATION OF THE LAW TO THE FACTS

■ The Owners operated a mining and landscape supply business at their property that was outside the Dallas City limits until annexation in April 1978. In August 1978, the City issued the Owners a Certificate of Occupancy on the property for the wholesale and retail sale of dirt, gravel, rock, and sand. The Certificate noted this use existed before the City annexed the property. The Owners' use became nonconforming in April 1978 when the City annexed their property. *Benners,* 485 S.W.2d at 777; *Huguley,* 341 S.W.2d at 216.

In July and August of 1987, the Board held two hearings about the Owners' nonconforming use of the property as a landscape supply business. At the first hearing, the Board terminated the Owners' nonconforming mining and landscape supply use rights. The Board initially set April 30, 1988, as the date for ending the nonconforming use. The Board's staff reasoned this termination date gave the Owners enough time to move the structures, materials, and machinery to another site. A neighbor testified the owners had two other properties where they could move the

machinery and structures and store the materials. The second hearing was to determine the value to amortize and the length of the amortization period. At this hearing the Owners conceded the removal cost of the business directly attributable to the termination date was controlling rather than the value of the structures because they would simply move the structures to another location.

Mrs. Winkles testified it would cost $106,813 to move the materials, the structure, and the machinery to another location. She stated this amount included $84,000 to move 17,150 yards of materials; $2400 to move two drag lines and four motors; $3000 to move the office building; $2000 to change advertising, letterhead, and office materials; and $15,000 to dig up and replace the driveway and surface area. However, a neighbor testified the Owners significantly increased their materials inventory within a week of the August hearing date.

The Board determined the amortization period should begin April 1978 but extended the termination date to April 30, 1989. The Board concluded the amortization period beginning April 1978 and ending April 30, 1989, was reasonable, having due regard for the Owners' investment. The Board heard evidence that the Owners had significantly increased the materials inventory. The Owners conceded removal costs were the controlling value rather than structure value. An owner cannot extend the period of nonconforming use by adding to its property. *Neighborhood Comm. on Lead Pollution*, 728 S.W.2d at 70; *Murmur Corp.*, 718 S.W.2d at 798. Thus, the Board gave the Owners a twenty-month period to stop the nonconforming use and to remove the structure, materials, and machinery to another location. When we view the entire record, we find there was ample evidence to support the Board's action in terminating the nonconforming use and permitting an additional twenty months for the Owners to discontinue the business and move to another location.

We hold substantial evidence supports the Board's order and that it was not unreasonable and arbitrary. We conclude the trial court substituted its discretion for that of the Board. Reasonable minds could have reached the conclusion the Board must have reached to justify its action. The trial court abused its discretion in failing to uphold the Board's order. We sustain the Board's points of error.

We reverse the trial court's judgment. We render judgment for the Board.