**CITY OF DALLAS, Texas, Board of Adjustment of the city of Dallas, Texas, and Raj Sharma, in his capacity as the Building Official of the City of Dallas, Petitioners,**

v.

**Doug VANESKO and Grace Vanesko, Respondents.**

No. 04–0263.

Supreme Court of Texas.

Argued Feb. 15, 2005.

Decided April 7, 2006.

Christopher D. Bowers, Asst. City Atty., Dallas, Paul A. Fletcher, San Antonio, for petitioners.

Roger Albright, Law Offices of Roger Albright, Dallas, for respondents.

Maxine Aaronson, Angela Annette Hunt, McKool Smith, Julia F. Pendery, Jonathan G. Vinson, Jackson Walker L.L.P., Dallas, Snapper L. Carr, Texas Municipal League, Austin, for amicus curiae

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, Justice JOHNSON and Justice WILLETT joined.

In this zoning case, we determine whether a city can enforce a zoning ordinance against a property owner whose substantially completed new home has been built in violation of the ordinance, even though the city had given preliminary approval to the owner's building plans. We conclude that it can.

■ Dallas residents Doug and Grace Vanesko wanted a larger home, so they decided to tear down their existing house and build a new one in its place on the same lot. To save money, they also decided to design the new structure themselves, without the assistance of architects and engineers, and act as their own general contractor. When submitting their building plans to the City of Dallas for a permit, the Vaneskos paid an additional fee for the City to do a more extensive plan review to ensure that the plans were in compliance with all city building codes and ordinances. The City approved the plans as submitted and issued a building permit. During the following year, as the new house was being constructed, City inspectors frequently visited the site without complaint. Then, after the roof was framed in, an inspector advised the Vaneskos that the structure

was too high, in violation of the zoning ordinance.[1] Rather than order the work to be stopped, the inspector recommended that the Vaneskos seek a height variance from the City of Dallas Board of Adjustment ("the Board"). The City staff and eighty percent of the neighbors surrounding the property supported the Vaneskos' request for a variance. The remaining twenty percent of neighbors did not actively support the variance, but neither did they object to it. Nevertheless, the Board denied the Vaneskos' variance request.[2]

The Vaneskos appealed the action of the Board by application for writ of certiorari to the Dallas County District Court, naming as defendants the City, the Board, and Raj Sharma, in his official capacity as the Building Official of the City of Dallas.[3] On a stipulated record, the district court reversed the Board's ruling and ordered the matter "remanded to the Board for further proceedings consistent [with] the holdings of *Town of South Padre Island, Texas v. Cantu,* 52 S.W.3d 287 (Tex.App.—Corpus Christi, 2001, no [pet.]) and *Board of Adjustment v. McBride,* 676 S.W.2d 705, 709 (Tex.App.—Corpus Christi, 1984, no writ)." A divided panel of the court of appeals affirmed. 127 S.W.3d 220, 228 (Tex.App.—Dallas 2003). We subsequently granted the City's petition for review. 48 Tex. Sup.Ct. J. 181 (Dec. 17, 2004).

## I.

As a quasi-judicial body, the decisions of a zoning board are subject to appeal before a state district court upon application for a writ of certiorari. *See* TEX. LOCAL GOV'T CODE § 211.011(a), (b); *Bd. of Adjustment v. Flores,* 860 S.W.2d 622, 625 (Tex.App.—Corpus Christi 1993, writ denied). The district court sits only as a court of review, and the only question before it is the legality of the zoning board's order. *City of Alamo Heights v. Boyar,* 158 S.W.3d 545, 549 (Tex.App.—San Antonio 2005, no pet.). To establish that an order is illegal, the party attacking the order must present a "very clear showing of abuse of discretion." *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67, 71 (1945). A zoning board abuses its discretion if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). With respect to a zoning board's factual findings, a reviewing court may not substitute its own judgment for that of the board. *See Walker,* 827 S.W.2d at 839. Instead, a party challenging those findings must establish that the board could only have reasonably reached one decision. *See id.* at 840. Our abuse-of-discretion review is necessarily less deferential when considering any legal conclusions made by the zoning board and is similar in nature to a de novo review. *See id.*[4]

1. The Vaneskos' property is in an R–10 zoning area, which provides for a maximum structure height of thirty feet. DALLAS, TEX., CITY CODE § 51A–4.112(e)(4)(E). The approved plans provided for a 38.25 foot height. In actuality, the Vaneskos' home is 38.11 feet high. Apparently, the plan reviewer in the city inspector's office believed the lot to be in an R–1/2ac(A) zoning area, which would have allowed for a maximum height of thirty-six feet. *Id.* § 51A–4.112(b)(4)(E).

2. The record indicates that a motion to *deny* the variance was initially brought before the Board and failed because the required 4/5 majority could not be met. However, a subsequent motion to *grant* the variance was brought and also failed. For the purposes of this opinion, we construe the failure of the motion to grant the variance as an implied denial of the variance.

3. For the purposes of this opinion, we will use the term "the City" to refer collectively to all three defendants.

4. We are mindful that *Walker* arose in the context of a mandamus proceeding. 827

## II.

The Vaneskos do not dispute that their home, as currently constructed, violates the applicable height restrictions for a single-family dwelling in an R–10 zoning area. *See* DALLAS, TEX., CITY CODE § 51A–4.112(e)(4)(E). Under state law, however, a local board of adjustment may

> authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done....

TEX. LOCAL GOV'T CODE § 211.009(a)(3). In Dallas, the Board's ability to grant variances is further regulated by city ordinance. *See* DALLAS, TEX., CITY CODE § 51A–3.102(d)(10). That ordinance permits the Board

> [t]o grant variances from ... height ... regulations that will not be contrary to the public interest when, owing to special conditions, a literal enforcement of this chapter would result in unnecessary hardship, and so that the spirit of the ordinance will be observed and substantial justice done. The variance must be necessary to permit development of a specific parcel of land which differs from other parcels of land by being of such a restrictive area, shape, or slope that it cannot be developed in a manner commensurate with the development upon other parcels of land in districts with the same zoning classification. A variance may not be granted to relieve a self created or personal hardship, nor for financial reasons only, nor may a variance be granted to permit any person a

privilege in developing a parcel of land not permitted by this chapter to other parcels of land in districts with the same zoning classification.

*Id.*

While the first portion of subsection 51A–3.102(d)(10) tracks the language in subsection 211.009(a)(3) of the Local Government Code, the city ordinance adds a number of additional restrictions. First, the variance must be "necessary" to permit development on the land such that the land *could not otherwise be developed* in accordance with the applicable ordinance. Second, the ordinance forbids a variance that relieves only a self-created or personal hardship. Third, financial reasons alone cannot justify the issuance of a variance. Finally, a variance may not be granted to offer a development privilege not available to other developers in similarly-zoned lots.

Taken together, these restrictions impose significant barriers to obtaining a variance and sharply curtail the Board's discretion in issuing one. Nevertheless, the trial court found that all of the prerequisites for a variance set forth in subsection 51A–3.102(d)(10) of the Dallas City Code were met and concluded that the Board clearly abused its discretion in denying the variance. In doing so, we believe the trial court substituted its own judgment for that of the Board.

Both the trial court and the court of appeals relied on *Cantu* and *McBride,* two cases they described as being "remarkably similar" to the case at bar. *See* 127 S.W.3d at 225–26. In both cases, a property owner who was constructing a house appealed the decision of a zoning board to deny him a variance from the mandatory setback line for the property. *Bd. of Ad-*

S.W.2d at 835. However, *Walker*'s description of the standard of review is particularly useful here because like mandamus proceedings, the standard of review in a zoning case requires a "clear" abuse of discretion to warrant a reversal of the zoning board's decision. *See id.* at 839–40.

justment v. McBride, 676 S.W.2d 705, 706 (Tex.App.—Corpus Christi 1984, no writ); Town of S. Padre Island, Tex. v. Cantu, 52 S.W.3d 287, 288–89 (Tex.App.—Corpus Christi 2001, no pet.). Like the Vaneskos, the McBrides and the Cantus had previously sought and received approval of their building plans from the city. McBride, 676 S.W.2d at 706–07; Cantu, 52 S.W.3d at 288. In McBride, the court of appeals held that the zoning board abused its discretion in denying the variance because the undisputed facts showed that a hardship would exist and that the exception would not adversely affect other interests. 676 S.W.2d at 709. Although the factual findings in Cantu were disputed, the court of appeals reached a similar result after reviewing the record of the proceedings before the zoning board. 52 S.W.3d at 291.

While Cantu and McBride bear some factual resemblance to the instant case, particularly in the sense that the property owners sought and received city approval of their building plans, neither case involved a zoning ordinance as restrictive as the Dallas ordinance. The governing ordinance in McBride permitted a variance for "other extraordinary and exceptional situations or conditions of such piece of property." CORPUS CHRISTI, TEX., ZONING ORDINANCE, § 29–5.01. The ordinance governing in Cantu merely incorporated the provisions of Chapter 211 of the Local Government Code. TOWN OF SOUTH PADRE, TEX., CODE OF ORDINANCES, § 20–16. As the dissent below correctly noted,

Neither [ordinance] specifically prohibited variances for self-created or personal hardships, nor did they specify that a variance must be sought to resolve a

hardship arising from a restrictive condition relating to the area, shape, or slope of the parcel. Thus, the ordinances governing McBride and Cantu were significantly broader than the Dallas code provision applicable here, and could be read as authorizing variances where the landowner built on the basis of an erroneously-issued permit.... [W]e can construe the Dallas City Code as authorizing a variance under the circumstances here only by largely ignoring its terms.

127 S.W.3d at 233–34 (Moseley, J., dissenting).[5]

■ Under the more restrictive scheme imposed by the Dallas City Code, we cannot conclude that the Board clearly abused its discretion by declining to grant the Vaneskos' request for a variance from the applicable height restrictions. While the cost involved in re-pitching the roof of the structure may constitute a hardship, that hardship is not in any way related to the "area, shape, or slope" of the parcel. See DALLAS, TEX., CITY CODE § 51A–3.102(d)(10). Rather, the hardship is personal in nature because it arose from decisions the Vaneskos made in designing their home, as opposed to the nature and configuration of the lot in question. See Currey v. Kimple, 577 S.W.2d 508, 512–13 (Tex.Civ.App.— Texarkana 1978, writ ref'd n.r.e.) (where lot is oddly shaped, setback requirements create hardships that are not personal in nature and are thus appropriate candidates for variances). As the Currey court noted, "[a]n example of a personal or self-created hardship might be a situation in which the owner of a square lot divides it into two triangles and then tries to secure

---

5. Although we distinguish Cantu and McBride from this case on the basis that the Dallas ordinance is more restrictive, we do not mean to say that the precise fact patterns in Cantu or McBride would always justify a variance.

A zoning board's decision to grant or deny a variance is discretionary in nature, and each case must be considered in light of its own facts and circumstances.

a variance in order to sell the property at a high price." *Id.* at 513. Similarly, it was the way the Vaneskos chose to design their house that created the hardship about which they now complain, for there was nothing about this parcel of land which required a roof higher than what the zoning ordinance allowed. As a result, we are left to conclude that the Vaneskos' hardship is personal and self-created—a condition for which the Dallas zoning ordinance prohibits relief.

 The Vaneskos contend the Board's decision was erroneously influenced by the city attorney's instruction that the Board could not consider whether a permit had been issued in error, or whether the structure had already been built. But the city attorney's actions are irrelevant to our analysis. The mere issuance of a building permit does not render a city's zoning ordinances unenforceable, nor does the fact that a permit was issued in error entitle the property owner to a variance in every case.[6] Were this so, the City would never be able to correct errors in the permitting process. Furthermore, subsection 51A–3.102(d)(10) of the Dallas City Code makes no mention of the particular relevance of a building permit, and we can hardly say the Board abused its discretion by failing to consider a factor that it was not directed, by ordinance, to consider in the first place.[7]

* * *

Because we conclude both that the Vaneskos' hardship was personal in nature and that the Board was not required to consider the erroneous issuance of a building permit, we cannot say on the facts before us that a clear abuse of discretion occurred. Accordingly, the judgment of the court of appeals is reversed, and judgment is rendered in favor of the City of Dallas.

Justice O'NEILL filed a dissenting opinion.

Justice O'NEILL, dissenting.

I agree that a trial court's power to review a board of adjustment's decision is limited, and the trial court in this case exceeded that power by ignoring the specific city ordinance that controlled the board's review of the Vaneskos' variance request. However, I am concerned that the board of adjustment misunderstood the level of discretion that the ordinance afforded. An attorney for the city admonished the board, I believe incorrectly, that it must ignore evidence that (1) the city had erroneously issued the permit upon which the Vaneskos relied, (2) the house had been substantially built in accordance with the plans the city had approved before the problem was discovered, (3) the cost to remedy the problem would be significant, and (4) there might be an adverse aesthetic effect on the neighborhood if the roof was torn off and re-pitched. Had the

---

**6.** We note that in the proceedings below, the Vaneskos initially raised an equitable estoppel argument before the trial court. However, on the Vaneskos' own motion, that claim was severed from the case and assigned a new docket number. We express no opinion on the validity of any estoppel claim that the Vaneskos may have currently pending before the trial court.

**7.** We also note that in applying for the building permit, the Vaneskos specifically agreed in writing that if a permit were to be issued,

"all provisions of the City ordinances and state laws will be complied with *whether herein specified or not.*" (emphasis added). Additionally, when the City approved the Vaneskos' building plans, the building inspector stamped the plans with the following statement: "This approval does not permit the violation of any city or state law." Thus, the record indicates that both the Vaneskos and the City were well aware that the issuance of a building permit did not excuse compliance with the applicable city ordinances.

board taken this evidence into account and nevertheless denied the Vaneskos' variance request, I believe that decision would have been within the board's considerable discretion. But from the record it is impossible to tell whether the board felt constrained by its attorney's admonishment. As a result, I would remand the case to the board for reconsideration of the Vaneskos' variance request with the proper legal principles in mind. Because the Court does not afford the board or the Vaneskos that opportunity, I respectfully dissent.

Under the Local Government Code, a board of adjustment may authorize a variance from the terms of a zoning ordinance if it is not contrary to the public interest and, due to special conditions, literal enforcement of the ordinance would result in unnecessary hardship, and so that "the spirit of the ordinance is observed and substantial justice is done." TEX. LOC. GOV'T CODE § 211.009(a)(3). This same language is echoed in the Dallas city ordinance, which further limits the board's decision-making authority, although not to the extent that the Court determines today. That ordinance describes the following parameters that govern the board's discretion in considering variance requests, which, for ease of reference, I have numbered [1] through [3]. Specifically, the board may grant variances from height regulations

> ▇ that will not be contrary to the public interest when, owing to special conditions, a literal enforcement of this chapter would result in unnecessary hardship and so that the spirit of the ordinance will be observed and substantial justice done. [2] The variance must be necessary to permit development of a specific parcel of land which differs from other parcels of land by being of such a restrictive area, shape, or slope that it cannot be developed in a manner commensurate with the development upon other parcels of land in districts with the same zoning classification. [3] A variance may not be granted to relieve a self created or personal hardship, nor for financial reasons only, nor may a variance be granted to permit any person a privilege in developing a parcel of land not permitted by this chapter to other parcels of land in districts with the same zoning classification.

DALLAS CITY CODE § 51A–3.102(d)(10).

The evidence that the board in this case was admonished not to consider is certainly relevant to the elements described in clause [1]. Evidence was presented at the board-of-adjustment hearing that the Vaneskos' neighbors, although understandably agitated by what had occurred, were not opposed to the variance. And there was some discussion that, because of the way the house was designed, a re-pitched roof would make the house look disproportionate and less aesthetically pleasing to the neighborhood. Thus, there was some indication, though not conclusive, that the variance would not be "contrary to the public interest." Further, any assessment of "unnecessary hardship" and "special conditions" necessarily requires a fact-specific inquiry that should allow the Vaneskos to explain, and the board to consider, how their need for the variance arose.

The Court, however, ignores the clause [1] elements because it reads clause [2] as the ultimate requirement for a variance. I disagree, for if that were the case there would have been no reason to include clause [1] in the ordinance. Instead, I believe clause [2]'s plain language speaks to parcels of land that have not yet been improved and, due to restrictions that are inherent in the land itself, a variance is "necessary to permit development...." Clause [2] simply does not address the situation presented when a structure has already been built on the land. I agree

with the *amici curiae* homebuilders [1] that there is a substantial difference between a hardship caused by the inability to build something desired, and a hardship caused by having to remove a nearly completed structure at considerable expense. I do not read the city ordinance here to preclude consideration of that difference.

Finally, I believe that the Court misinterprets clause [3]. The hardship here was not entirely self-created, as the city inspector was at least equally culpable. And although the hardship was in fact personal, there was some evidence that the remedy necessary to effect compliance would require eliminating trees and re-pitching the roof in a way that would be less aesthetically pleasing—something the neighbors might consider a hardship that they shared. Nevertheless, interpreting the ordinance to mean that whenever personal hardship is involved a variance is prohibited is surely wrong. It is hard to imagine the need for a variance that does not in some way implicate personal hardship. Rather, the logical interpretation is that personal hardship cannot be the *sole* basis for a variance. If official error and detrimental reliance are involved, the fact that personal hardship results shouldn't defeat the variance if other conditions are met, *i.e.*, the variance is not contrary to the public interest and literal enforcement would cause unnecessary hardship. Such a determination should be within the board's discretion.

I agree with the Court that the court of appeals and the trial court erred in tying the board's discretion to *Cantu* and *McBride*, in effect ignoring the strictures that the city ordinance imposed. *See Town of S. Padre Island v. Cantu*, 52 S.W.3d 287 (Tex.App.—Corpus Christi 2001, no pet.); *Bd. of Adjustment v. McBride*, 676 S.W.2d 705 (Tex.App.—Cor-

pus Christi 1984, no writ). But I do not read the ordinance's strictures as divesting the board of any discretion at all, as the city's attorney appeared to advise. And while I agree with the Court that "the mere issuance of a building permit does not render a city's zoning ordinances unenforceable, nor does the fact that a permit was issued in error entitle the property owner to a variance in every case," this doesn't answer the question of what evidence the board of adjustment could consider in deciding the Vaneskos' variance request. All needs for a variance that might arise after an erroneous permit has been issued are not by definition self-created, personal hardships for which variances may not be granted. If that were so, homeowners would be strictly liable for city errors regardless of the circumstances, marginalizing the need for boards of adjustment at all and rendering other parts of the city's ordinance meaningless.

Because I believe the board of adjustment may have reached its decision to deny the Vaneskos' variance request by "fail[ing] ... to analyze or apply the law correctly," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992), I would afford the board and the Vaneskos another chance. Accordingly, I would affirm the lower courts' remand to the board of adjustment for reconsideration, although on different grounds. Because the Court does not, I respectfully dissent.

1. We received a joint amicus brief from the Home Builders Association of Greater Dallas, the Greater Fort Worth Builders Association, and Randall Goss.