**Reverse and Rendered and Opinion Filed August 27, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01278-CV**

**TCHDALLAS2, LLC, Appellant**
**V.**
**ANDRES "ANDREW" ESPINOZA, IN HIS OFFICIAL CAPACITY AS THE
BUILDING OFFICIAL OF THE CITY OF DALLAS, TEXAS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-03741**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Goldstein

TCHDallas2, LLC (TCH) appeals the trial court's judgment reversing the decision of the Board of Adjustment of the City of Dallas (the BOA) in the underlying case involving a poker establishment. In a single issue, TCH argues the trial court erred in determining the BOA abused its discretion in reversing the underlying decision of the Dallas building official to revoke TCH's certificate of occupancy (C.O.). We reverse the trial court's judgment and render judgment affirming the decision of the BOA reinstating TCH's C.O.

## BACKGROUND[1]

Plaintiff Andres "Andrew" Espinoza ("plaintiff" or "building official") appeared in his official capacity as the chief building official of the City of Dallas, Texas. Megan Wimer was the City of Dallas assistant building official who was involved in the issuance and revocation of the certificate of occupancy ("C.O.") at issue. Defendant the Board of Adjustment for the City of Dallas, Texas ("Defendant" or "BOA") is an established board of the City of Dallas, a municipal corporation existing under the laws of the State of Texas and having its principal office in Dallas County. TCH is the occupant of, and owner and operator of the business located on Harry Hines Boulevard in Dallas, Texas (the "Harry Hines Location" or the "Property") for which the C.O. in dispute was issued. Ryan Crow is the CEO and an owner of TCH.

On or about December 9, 2019, TCH entered into a commercial lease with Moon Ventures, Ltd., the owner of the Harry Hines Location. On March 3, 2020, an application for a C.O. was submitted to the City of Dallas for the Property by applicant Juan Santiago for the proposed use of a gaming room. On July 2, 2020, Crow submitted a land use statement in support of the application for the C.O. listing aspects of the planned use of the Property. The land use statement indicated that

---

[1] The factual background here presented draws heavily on the parties' stipulated facts filed in October 2022. The stipulated facts have been condensed for the sake of brevity.

–2–

TCH would offer poker and similar games and that TCH would charge various fees to its members, live stream shows, and sell merchandise.

On October 23, 2020, the building official issued a C.O. for the Property for commercial amusement (inside) use. On December 17, 2021, Wimer sent a letter to Crow revoking TCH's C.O. because the operations at the location as described in the land use statement violated Texas Penal Code section 47.04, and the C.O. had been issued in error. On January 5, 2022, TCH appealed the revocation of its C.O. to the BOA. On February 22, 2022, and March 22, 2022, the BOA held hearings on TCH's appeal (collectively, the "BOA Hearings").

The BOA was tasked with deciding "whether the building official erred when the building official revoked the certificate of occupancy by concluding that it was issued in error because the applicant violates Texas Penal Code Section 47.04, keeping a gambling place." The BOA's attorney clarified, "So a violation of one of those [ordinances, regulations, or laws] is what you have to determine." The BOA presumed that the TCH use of the Property was a legal use.[2]

The BOA discussed whether TCH came within the "safe harbor" provided by section 47.04(b). In doing so, the BOA noted that it took TCH two years of due

---

[2] We note without further discussion that an opinion request that is directly on point was submitted to the Texas Attorney General on January 26, 2019. RQ-0209-KP. Specifically, "[a]re poker gambling enterprises that charge membership or other fees or receive other compensation from gamblers playing poker – but do not receive a "rake' – permitted under Texas law?" For purposes of the request, "rake" was defined as "a fee or a percentage of the value at risk in gambling." While an Attorney General Opinion is not binding or of precedential value, it may be persuasive to the courts, or in this instance, a municipality charged with ensuring a use is not in violation of state law or the Texas Constitution. As this request was closed with no opinion issued, we are not favored with guidance.

–3–

diligence to obtain the C.O., during which time TCH worked with the city attorney and the city council. One board member stated, "We, as a Board, are deciding whether or not the city official erred, not whether or not the use is illegal." The BOA also discussed the fact that TCH had not been prosecuted by the district attorney, and the issue of whether TCH's operation was legal or illegal remained undetermined by a court of law. At the conclusion of the hearing, the BOA voted unanimously to reverse the building official's decision and reinstate TCH's C.O.

On April 1, 2022, David Session in his official capacity as the building official for the City of Dallas timely filed an original petition and petition for writ of certiorari against the BOA, seeking a reversal of the BOA's decision. Following a trial before the court on October 25, 2022, the trial court entered an order granting the building official's first amended petition and petition for writ of certiorari. The trial court determined that the BOA "abused its discretion and made an illegal decision" when it reversed the building official's revocation of TCH's C.O. "which was issued in violation of state law." The trial court reversed the BOA's decision and entered judgment in favor of Espinoza as building official. On November 28, 2022, TCH filed its notice of appeal.

On December 5, 2022, the trial court filed its findings of fact and conclusions of law. The trial court's findings of fact, which "were based, in part, on observing witnesses and evidence presented at trial," included the following:

Under the City of Dallas's administrative procedures of the construction code, a building official shall revoke a certificate of occupancy if he or she determines the certificate was issued in error and shall deny any application for which the certificate "requested does not comply with the codes, the Dallas Development Code . . . or any county, state, or federal laws or regulations."

"Chapter [52] of the [Dallas City] Code states that . . . when a certificate of occupancy is granted, the use must comply with all federal, state, and local ordinances and laws." The City of Dallas's Administrative Procedures of the Construction Code provides that "[a]ny certificate of occupancy presuming to give authority to violate any . . . state, or federal laws . . . shall be void ab initio."

Crow testified that TCH in Dallas has been continuously in operation since 2020. "Active gambling" as defined in the Texas Penal Code section 47.04 occurs at TCH. Patrons gamble at TCH when they play and bet money on poker games played with cards. TCH is open 24 hours a day, seven days a week. Anytime, 24 hours a day, 7 days a week, any person over the age of 18 can walk into TCH off the street, provide minimal personal information, pay a fee, and start gambling in "about five minutes." Access to TCH is indistinguishable from that of a nightclub or restaurant which charges a cover fee. According to the membership agreement, the only "eligibility" criteria to enter and play as a "probationary" member is being at least 18 years of age. Tens of thousands of people have access to playing the poker games at TCH, with an average of 630 players a day.

TCH, its employees, and some of its patrons receive economic benefits other than winnings from the poker games. The owners/partners of TCH, including Crow, derive a significant economic benefit from their ownership/partnership in TCH and their running of a for-profit poker business. TCH is being used as a gambling place, as it is the location where patrons engage in gambling and participate in lotteries. TCH collects fees or charges from the operations of its business. TCH charges and collects table fees via a time collection derived from the time each patron is sitting at the table gambling. TCH charges a $13 per hour fee, which hourly fee starts when a player sits down at a table and runs for the duration while they are sitting at the table. This $13 per hour fee generates over 90% of TCH's revenue. TCH provides poker tournaments regularly at the Property. TCH charges players tournament fees, which include "staff" fees and "access" fees.

Like a restaurant, tavern, or nightclub, revenue is generated by food and beverages being served at TCH by waitresses employed by TCH who are tipped by the persons gambling at poker tables. TCH represented that "TCH paid $884,000 in sales tax in 2021," that "TCH is projected to pay $1,100,000 in sales tax in 2022," and that "TCH expects to pay over $3,000,000 in Federal Income Taxes for 2021." Players at TCH exchange money for chips for betting in the poker games at the Property.

The building official was not authorized to approve an application for a C.O. for an illegal use. The building official erroneously issued a C.O. for TCH based on incomplete information and an insufficient understanding of the applicable law. Having subsequently determined that the use violated the Texas Penal Code, the building official was obligated to revoke the C.O.

Subsequently, similar businesses sought to open similar poker houses at other locations in Dallas. In response to applications for C.O.s for similar poker houses, Wimer issued denials of the C.O. applications for Champions Club, Dallas Poker Club (KBKM) and Fifty-Two Social, indicating that the proposed uses did not comply with the Texas Penal Code's prohibition on keeping a gambling place. In both the Champions Club and Dallas Poker Club BOA hearings, the BOA voted to affirm the building official's decision to deny the C.O.s to the poker rooms because they did not comply with Texas law.

Based on these findings, the trial court entered conclusions of law that, among other things, established the standard of review the trial court applied to the BOA's decision. The trial court concluded, in pertinent part, that:

This Court sits as a court of review to determine the legality of the Board of Adjustment's decision reversing the Building Official's revocation of the C.O. for the Property.

To establish that the Board's decision was illegal, Plaintiff needed to clearly demonstrate that the Board abused its discretion. A board abuses its discretion if it: (1) acts without reference to any guiding rules and principles; or (2) clearly fails to analyze or apply the law correctly.

In reviewing the Board's legal conclusions, the Court determined whether the TCH use of the Property violates the Texas Constitution

–6–

and various provisions in Chapter 47 of the Texas Penal Code. In this case, the Court was required to consider whether the TCH use at the Property violates a portion of the Texas Constitution and portions of the Texas Penal Code which fulfill the Texas constitutional mandate to prohibit gambling. The Court has jurisdiction to make both of these assessments.

The trial court concluded TCH violated the penal code's prohibition on gambling and keeping a gambling place. Further, the trial court concluded that the building official erroneously issued a C.O. to TCH; the building official was obligated to revoke the C.O. after determining TCH's use of its property violated the penal code; TCH's use did not fall within the affirmative defenses to prosecution for the offenses of gambling and keeping a gambling place; and the BOA's decision to reverse the revocation of TCH's C.O. was therefore illegal and an abuse of discretion.

## ANALYSIS

In a single issue, TCH argues as follows:

The Building Official issued Texas Card House a Certificate of Occupancy for a private poker club and then, despite no change in law or facts, revoked that Certificate on the purported basis that it was "issued in error." Did the Board of Adjustment clearly abuse its discretion by reversing that revocation based on evidence that the Certificate was not "issued in error," as that term is used in the sole enumerated ground for revocation, and evidence that revocation was instead caused by lobbying or a change of mind about a reasonably disputable application of law?

We review the trial court's judgment regarding the BOA's decision de novo.

*Bd. of Adjustment of City of Dallas v. Billingsley Family Ltd. P'ship*, 442 S.W.3d 471, 474 (Tex. App.—Dallas 2013, no pet.).

As a quasi-judicial body, the decisions of a zoning board are subject to appeal before a state district court upon application for a writ of certiorari. *See* TEX. LOCAL GOV'T CODE § 211.011(a), (b); *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006). The district court sits only as a court of review, and the only question before it is the legality of the zoning board's order. *Vanesko*, 189 S.W.3d at 771. To establish that an order is illegal, the party attacking the order must present a "very clear showing of abuse of discretion." *Id.* (citing *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 71 (1945)). A zoning board abuses its discretion if it acts without reference to any guiding rules and principles or clearly fails to analyze or apply the law correctly. *Vanesko*, 189 S.W.3d at 771; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). In deciding whether the BOA abused its discretion, the district court considers the BOA's verified return along with any additional evidence "necessary for proper disposition of the matter." *Billingsley*, 442 S.W.3d at 474 (citing TEX. LOC. GOV'T CODE § 211.011(d), (e)). With respect to a zoning board's factual findings, a reviewing court may not substitute its own judgment for that of the board. *Vanesko*, 189 S.W.3d at 771; *see Walker*, 827 S.W.2d at 839. Instead, a party challenging those findings must establish that the board could only have reasonably reached one decision. *Vanesko*, 189 S.W.3d at 771; *see Walker*, 827 S.W.2d at 840. Our abuse-of-discretion review is necessarily less deferential when considering any legal conclusions made by the

zoning board and is similar in nature to a de novo review. *Vanesko*, 189 S.W.3d at 771.

Section 47.04 of the penal code, entitled "Keeping a Gambling Place," provides the following:

> (a) A person commits an offense if he knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used.
>
> (b) It is an affirmative defense to prosecution under this section that:
>
> (1) the gambling occurred in a private place;
>
> (2) no person received any economic benefit other than personal winnings; and
>
> (3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants.
>
> (c) An offense under this section is a Class A misdemeanor.

TEX. PENAL CODE § 47.04.

The verified record reflects that the BOA's decision was based upon significant historical facts relating to governmental oversight, review, and approval. Specifically, TCH was issued a C.O. after two years of due diligence during which time TCH worked with the city attorney and the city council to ensure the planned operations would comply with all relevant laws and local ordinances. TCH conducted its operations without making any changes for nearly fourteen months after the issuance of the C.O., and TCH was not prosecuted by the district attorney or any other agency. Nevertheless, in December 2021, the building official revoked

–9–

TCH's C.O. on the basis that TCH's operations at the location as described in the land use statement violated Texas Penal Code section 47.04. The discussion among the members of the BOA reflected that the issue of whether TCH's operations were legal or illegal had not been determined by a court of law, and it was not clear whether TCH's operations came under the safe harbor provision of penal code section 47.04. In this specific context, the BOA voted unanimously to reverse the building official's revocation of TCH's C.O.

The trial court stated in its conclusions of law that it sat as a "court of review to determine the legality of the" BOA's decision, and it concluded TCH's violated the penal code's prohibition on gambling and keeping a gambling place. We conclude the trial court thereby erred in failing to afford the required deference to the BOA's decision. The court must not substitute its discretion for the BOA's, even if the court concludes the overwhelming preponderance of evidence is against the BOA's decision. *Bd. of Adjustment of City of Dallas v. Winkles*, 832 S.W.2d 803, 805 (Tex. App.—Dallas 1992, writ denied) (citing *City of San Angelo*, 190 S.W.2d at 70). If reasonable minds could have reached the conclusion the BOA must have reached to justify its action, the trial court must uphold the BOA's order. *Winkles*, 832 S.W.2d at 805; *City of San Angelo*, 190 S.W.2d at 70. In other words, the party challenging the BOA's findings must establish that the BOA could only have reasonably reached one decision. *Vanesko*, 189 S.W.3d at 771; *see Walker*, 827 S.W.2d at 840. We conclude the trial court effectively substituted its discretion for

–10–

that of the BOA in this case in which the BOA could have reached multiple decisions. *See Vanesko*, 189 S.W.3d at 771; *Winkles*, 832 S.W.2d at 805. We sustain TCH's single issue.

We reverse the trial court's judgment and render judgment affirming the decision of the BOA reinstating TCH's C.O.

221278f.p05

/Bonnie Lee Goldstein//
BONNIE LEE GOLDSTEIN
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TCHDALLAS2, LLC, Appellant

No. 05-22-01278-CV     V.

ANDRES "ANDREW" ESPINOZA,
IN HIS OFFICIAL CAPACITY AS
THE BUILDING OFFICIAL OF
THE CITY OF DALLAS, TEXAS,
Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-03741.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **REVERSED** and judgment is **RENDERED** that:

the decision of the Board of Adjustment of the City of Dallas
reinstating the certificate of occupancy of TCHDallas2 is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of August, 2024.

–12–