COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

JUAN MANUEL TELLEZ,                                    No. 08-03-00294-CV

§

      Appellant,                                    Appeal from

§

v.                                                     County Court at Law No. 5

§

CITY OF SOCORRO,                                       of El Paso County, Texas

§

      Appellee.                                    (TC # 2002-2614)

§

# **O P I N I O N**

Juan Manuel Tellez appeals a final judgment affirming the decision of the Socorro Board of Adjustment. On original submission, we dismissed the suit *sua sponte* for lack of subject-matter jurisdiction. *Tellez v. City of Socorro*, 164 S.W.3d 823, 830 (Tex.App.--El Paso 2005). The Supreme Court reversed that decision and remanded for further proceedings. *Tellez v. City of Socorro*, 226 S.W.3d 413 (Tex. 2007). Having reviewed the record and finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Tellez owns and operates Tellez Motors, a business which sells salvaged cars and auto parts. Established in 1982, the business is located at 11143 Alameda. In June 1988, Tellez purchased adjacent property at 208 Midnight Sun. This new property was not zoned at the time of purchase, and Tellez understood that only pigs were prohibited on the land. Tellez stored salvaged autos and parts on the lot. A small cinder-block structure is also located on the property. At one time, Tellez allowed a company to park its trucks on the Midnight Sun property, but he continued to store auto parts on the lot. Business continued as usual, and the trucks could only park wherever space was

available. Although Tellez did not lease the property, he admitted receiving payment for allowing the company to park its trucks there.

On May 1, 1989, the City of Socorro enacted Ordinance No. 76 to establish comprehensive zoning and land use regulations. *See* SOCORRO, TX., ORDINANCE NO. 76 (1989). Pursuant to this ordinance, the Midnight Sun property was designated as R-1 Single Family zone. On the same day, the City enacted Ordinance No. 75 which provided that wrecking or junkyards could only be located in M-2 Heavy Industrial zones. SOCORRO, TX., ORDINANCE NO. 75 (1989). Ordinance No. 75 expressly applied to all wrecking or junkyard premises in existence prior to May 1, 1990. *Id.*

In 1996, the City began sending Tellez notices of zoning violations alleging that he was storing junk in a residential lot. Tellez spoke with Reyes Fierro, the Planning Director for the City, who advised Tellez that he had to prove a legal non-conforming use. He suggested that Tellez produce documentation showing he paid commercial taxes on the Midnight Sun property. According to Fierro, this would have been sufficient to establish a legal non-conforming use because Tellez's business was established before the property was zoned R-1. But the appraisal district records revealed that the lot was listed as vacant residential rather than commercial property. Fierro also reviewed aerial photographs to determine whether the property was being used as an auto salvage yard prior to the zoning change, but the photographs did not support such a conclusion. Consequently, the Midnight Sun property did not qualify as a legal non-conforming use. Fierro advised Tellez that he could request that the property be re-zoned, but when Tellez submitted an application to re-zone his property from R-1 Single Family Residential to M-2 Heavy Industrial, the Planning Commission denied the request. The City Council then heard and denied his appeal. Finally, the Board of Adjustment voted to deny the re-zoning request.

Tellez filed a petition for writ of certiorari in County Court at Law No. 5 of El Paso County

alleging that the use of the premises as an auto salvage yard prior to May 1, 1989 constituted a legal non-confirming use. The court did not issue a writ of certiorari for the records of the Board of Adjustment and the Board did not voluntarily forward its record to the reviewing court. At trial, the court heard the testimony of several witnesses appearing on behalf of Tellez and the Board of Adjustment and entered judgment affirming the Board's decision. Tellez timely filed notice of appeal.

## DENIAL OF NON-CONFORMING USE

In his sole issue on appeal, Tellez complains that the County Court at Law abused its discretion by denying him a non-conforming use of his property. The City responds that the only issue before the court below was whether the Board of Adjustment abused its discretion by denying a request for legal non-conforming status of the Midnight Sun property.

### *Scope of Review in the County Court at Law*

Tellez frames his issue for review as though the County Court at Law conducted a trial *de novo* and had authority to grant his request for a non-conforming use. This is contrary to the established procedure for certiorari review of decisions of a board of adjustment.

A board of adjustment is a quasi-judicial body. *Board of Adjustment of the City of Corpus Christi v. Flores*, 860 S.W.2d 622, 625 (Tex.App.--Corpus Christi 1993, writ denied). A person aggrieved by a decision of the board of adjustment may present to a district court, county court, or county court at law a verified petition alleging that the decision of a board of adjustment is illegal in whole or in part and specifying the grounds of illegality. TEX.LOC.GOV'T CODE ANN. § 211.011(a)(1)(Vernon 2008). Upon presentation of the petition, the reviewing court may grant a writ of certiorari directed to the board. TEX.LOC.GOV'T CODE ANN. § 211.011(c). The writ of certiorari is the method by which the court conducts its review. *Davis v. Zoning Bd. of Adjustment*

*of the City of La Porte*, 865 S.W.2d 941, 942 (Tex. 1993). Its purpose is to require the board of adjustment to forward to the court the record of the particular decision being challenged. *Id.*; *see City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 70 (1945). If the trial court grants the petition for writ of certiorari, the board of adjustment must submit the record of its decision or "return," and the return "must concisely state any pertinent and material facts that show the grounds of the decision under appeal." TEX.LOC.GOV'T CODE ANN. § 211.011(c), (d). Although the reviewing court is authorized to hear evidence necessary for the proper disposition of the matter[1], the court sits only as a court of review. *Pick-n-Pull Auto Dismantlers v. Zoning Board of Adjustment of the City of Fort Worth*, 45 S.W.3d 337, 340 (Tex.App.--Fort Worth 2001, pet. denied). Review of the board's decision is not a trial *de novo*. *See Boehme Bakery*, 190 S.W.2d at 70. The reviewing court may reverse or affirm, in whole or in part, or modify the decision that is appealed. TEX.LOC.GOV'T CODE ANN. § 211.011(f).

The only question that may be raised by a petition for writ of certiorari is the legality of the board of adjustment's order. *Pearce v. City of Round Rock*, 78 S.W.3d 642, 646 (Tex.App.--Austin 2002, pet. denied), *citing City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 69 (1945); *Pick-n-Pull Auto Dismantlers*, 45 S.W.3d at 340. We apply a legal presumption in favor of the board of adjustment's order and the party attacking it has the burden of establishing that the board clearly abused its discretion. *See Pick-n-Pull Auto Dismantlers*, 45 S.W.3d at 340. To establish an abuse of discretion, the contesting party must demonstrate that the board acted arbitrarily and unreasonably, without reference to any guiding rules or principles. *Id.*, *citing Garcia v.*

---

[1]  Section 211.011(e) provides: "If at the hearing the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take evidence as directed. The referee shall report the evidence to the court with the referee's findings of fact and conclusions of law. The referee's report constitutes a part of the proceedings on which the court shall make its decision." TEX.LOC.GOV'T CODE ANN. § 211.011(e).

*Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).

*Scope of Appellate Review*

Although this is an appellate review of an agency's action, we do not employ the substantial evidence standard of review in reviewing the Board of Adjustment's denial of non-conforming use. *Nu-Way Emulsions, Inc. v. City of Dalworthington Gardens*, 617 S.W.2d 188, 189 (Tex. 1981). In this quasi-administrative appeal, we review the legality of the Board's decision to determine whether the County Court at Law abused its discretion in affirming the Board's order. *See Pearce*, 78 S.W.3d at 646-47. Like the reviewing court below, we are limited to determining whether the Board of Adjustment abused its discretion by denying Tellez's request for a non-conforming use. *See Flores*, 860 S.W.2d at 626, *citing Boehme Bakery*, 190 S.W.2d at 70. We presume the challenged order to be valid and we examine the entire record. *See Pick-n-Pull Auto Dismantlers*, 45 S.W.3d at 340; *Flores*, 860 S.W.2d at 626. If the evidence as a whole is such that reasonable minds could have reached the same conclusion as that made by the Board of Adjustment, no abuse of discretion is shown. *Texans to Save the Capital, Inc. v. Board of Adjustment of the City of Austin*, 647 S.W.2d 773, 777-78 (Tex.App.--Austin 1983, writ ref'd n.r.e.).

*The State of the Record*

Before considering the merits of the appeal, we must address the state of the record. The County Court at Law, as the reviewing court, was required to consider the original papers before the Board, as well as the evidence introduced during the hearing. *See Boehme Bakery*, 190 S.W.2d at 69. The record before us does not contain the Board of Adjustment's records pertaining to the decision to deny Tellez's request for a non-conforming use. These records are absent for two reasons. First, Tellez did not request and the trial court did not issue a writ of certiorari directed to the Board of Adjustment to review its decision and neither the City nor the Board voluntarily filed a verified return stating any pertinent and material facts showing the grounds of the decision. *See* TEX.LOC.GOV'T CODE ANN. § 211.011(c), (d).[2] Second, Tellez objected at trial when the City offered into evidence the minutes of the Board of Adjustment which would have shown the evidence relied upon by the Board in making its decision. The City withdrew its offer, noting that it was Tellez's burden to establish that the Board of Adjustment did not have sufficient evidence before it to make the challenged decision.

The City was correct in its observation as to which party had the burden to present the evidence considered by the Board of Adjustment. Because the writ of certiorari was not requested or issued, Tellez had the burden of providing a sufficient record at the hearing to determine the illegality of the Board of Adjustment's decision. *Cf. Nussbaum v. City of Dallas*, 948 S.W.2d

---

[2] In an appeal involving a similar statute, Section 214.0012 of the Local Government Code, we have held that failure to both file the petition for writ of certiorari and request issuance of the writ of certiorari is jurisdictional. *Martinez v. City of El Paso*, 169 S.W.3d 488, 492 (Tex.App.--El Paso 2005, pet. denied). While timely filing the petition for writ of certiorari is necessary to invoke the subject matter jurisdiction of the reviewing court under both Section 214.0012 and Section 211.011, requesting issuance of the writ is not jurisdictional. *Davis v. Zoning Board of Adjustment of the City of LaPorte*, 865 S.W.2d 941, 942 (Tex. 1993); *Teague*, 190 S.W.3d at 820. Whether the writ is requested and issued affects only whether there is a record for the trial court to review, not whether the trial court has jurisdiction over the cause of action. *Teague*, 190 S.W.3d at 820. Accordingly, we disavow that portion of *Martinez* which states that requesting issuance of the writ of certiorari is necessary to invoke the jurisdiction of the reviewing court.

305, 307 (Tex.App.--Dallas 1996, no writ)(holding that under TEX. LOC. GOV'T CODE ANN. § 214.0012(a), where appellant failed to request writ of certiorari and no evidence existed in record, the presumption of validity required that the order be upheld). If there is no record of the board's decision for the trial court to review, the court must presume that the board's decision is valid and uphold it. *See Teague v. City of Jacksboro*, 190 S.W.3d 813, 820 (Tex.App.--Fort Worth 2006, pet. denied); *Nussbaum*, 948 S.W.2d at 308. Tellez not only failed to present the evidence considered by the Board of Adjustment, he objected when the City offered the Board's minutes into evidence. When the trial court denied its motion for directed verdict, the City presented witness testimony concerning the evidence the Board of Adjustment considered in ruling on Tellez's request. Consequently, Tellez's failure to insure that the reviewing court had a sufficient record before it is not fatal to his appeal because the County Court at Law had the necessary evidence before it to consider whether the Board of Adjustment abused its discretion.

*Non-Conforming Use*

Under the common law, a non-conforming use of land or buildings is a use that existed legally when the zoning restriction became effective and has continued to exist. *City of University Park v. Benners*, 485 S.W.2d 773, 777 (Tex. 1972). When determining whether there is a legal non-conforming use in a particular case, the proper focus is on the legislative enactments of the regulation body. *See Board of Adjustment of the City of San Antonio v. Wende*, 92 S.W.3d 424, 431 (Tex. 2002). The City of Socorro's interpretation of non-conforming use is consistent with the common law. City of Socorro Ordinance No. 76 defines numerous terms, including non-conforming use. It provides that non-conforming use means the use of land or a building, or a portion thereof, which does not conform with the current land use regulations of the zoning district in which it is located. SOCORRO, TX., ORD. No. 76, Section 17 (86). Under Ordinance No. 76, a legal non-

conforming use which existed prior to the enactment of a regulation is permitted to continue but cannot be expanded or enlarged. SOCORRO, TX., ORD. No. 76, Section 6. Consistent with common law, Ordinance No. 76 also requires that the non-conforming use be continuous. Ordinance No. 76 addresses two situations in which non-conforming use status is lost. Section 6, subsection 3 pertains to non-conforming uses of land with minor structures with a replacement cost of less than $1,000. SOCORRO, TX., ORD. No. 76, Section 6(3). It provides that if the non-conforming use ceases for any reason for more than thirty days, any subsequent use must conform to the existing regulations for the property. *Id.* Section 6, subsection (5)(e) pertains to non-conforming use where there is a structure on the premises with a replacement cost of more than $1,000. SOCORRO, TX., ORD. NO. 76, Section 6(5)(e). Under this subsection, when a non-conforming use is discontinued or abandoned for six consecutive months or for eighteen months during any three-year period, any subsequent use of the premises must conform to the existing regulations. *Id*.

In support of his assertion that he is entitled to a legal non-conforming use, Tellez places significant reliance on an April 4, 2002 memorandum from the former City Attorney, R. Contreras, to the mayor, the City Council, and Fierro. In that memo, Contreras related that Tellez "claims to have used the property for salvage yard purposes" and that he had advised Tellez to locate some aerial maps supporting his statement. Contreras also stated that if Tellez's position could not be contradicted by the Planning Department, "it appears that the rear property likely is protected under the grandfathering provisions of our ordinance." While the memo reflects the former City Attorney's legal opinion about the application of Ordinance No. 76 to the facts, it is not binding on the Board of Adjustment.

Tellez and other witnesses testified that he had used the Midnight Sun property since 1988 for his auto salvage business. Elfida Gutierrez testified that she is familiar with Tellez's property

because she owns property on Midnight Sun and has lived there since 1976. She claimed that Tellez's Midnight Sun property was completely vacant from 1990 until 1997 and that it had only a small cinder-block "shack" on it. A 1991 aerial photograph of the Midnight Sun property[3] showed that it was vacant except for a trailer or small structure. Gutierrez recalled that the company which installed the water and sewer lines in the area several years earlier had parked its trucks on Tellez's property. Reyes Fierro, the Planning Director for the City of Socorro, testified that Tellez told him that he had allowed the Midnight Sun property to be used as a construction site in 1995 and 1996 when the sewer and water connections were being made in the area.

The Board of Adjustment heard conflicting evidence as to whether the Midnight Sun property was being used as a wrecking or junkyard at the time Ordinance Nos. 75 and 76 were enacted. A board of adjustment does not abuse its discretion by basing its decision on conflicting evidence. *Southwest Paper Stock, Inc. v. Zoning Board of Adjustment of the City of Fort Worth*, 980 S.W.2d 802, 805 (Tex.App.--Fort Worth 1998, pet. denied). Even if the evidence conclusively established that the Midnight Sun property was being used as a salvage yard on May 1, 1989, there is conflicting evidence whether the Midnight Sun property was continuously used as a junkyard after May 1, 1989 as required to maintain the non-conforming use status. The court below specifically found that the 1991 aerial photograph admitted into evidence showed the property was vacant. Consistent with this evidence, the property was listed on the appraisal district's records as vacant residential. Because there is no evidence of the replacement cost of the small cinder-block structure located on the Midnight Sun property, it is unclear whether subsection 3 or 5 would apply. However, there is

---

[3] In his brief, Tellez asserts that the City did not establish that the photograph was actually taken in 1991. To the extent Tellez is raising a complaint about the admissibility of the photograph, it is waived because he failed to object below. TEX.R.APP.P. 33.1; TEX.R.EVID. 103(a)(1). Further, Reyes Fierro affirmatively identified the photograph as a 1991 aerial.

evidence from which the Board of Adjustment could have found that the property was vacant for more than six months, and therefore, it could have concluded that the non-conforming use status had been lost under either subsection.

Because Tellez failed to carry his burden of establishing that the Board of Adjustment abused its discretion by denying his request for a non-conforming use, we overrule his sole issue for review and affirm the judgment.


March 5, 2009

ANN CRAWFORD McCLURE, Justice

Before McClure, Ables, JJ, and Barajas, C.J. (Ret.)
Ables, J., sitting by assignment
Barajas, C.J. (Ret.), sitting by assignment