

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00221-CV

**THE CITY OF SAN ANTONIO BOARD OF ADJUSTMENT**,
Appellant

v.

Asher **REILLY** and Five Aces/SA, Ltd.,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-18754
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed:   March 19, 2014

REVERSED AND RENDERED

The City of San Antonio Board of Adjustment appeals from a judgment reversing its decision to uphold the denial of a request to demolish a house in a historic district. Because we conclude the Board's decision did not constitute a clear abuse of discretion, we reverse the trial court's judgment and render judgment affirming the Board's decision.

### BACKGROUND

Asher Reilly and Five Aces/SA Ltd., (referred to collectively as "Reilly"), own a house and a lot located at 112 Lindell Place in the River Road Historic District in San Antonio, Texas.

Reilly planned to demolish the house and construct a six-unit apartment complex in its place. Reilly filed an application to demolish the house as required by the City's Unified Development Code. This request was ultimately denied by the City's historic preservation officer.[1]

Reilly appealed the historic preservation officer's decision to the City of San Antonio Board of Adjustment. The Board held a public hearing on Reilly's appeal. At this hearing, documents, photographs, maps, and drawings were presented to the Board. Included in the documents were recommendations prepared by the City's staff and the historic design and review commission. Included in the photographs were photographs of 112 Lindell Place and photographs of comparable houses in the River Road Historic District and other historic districts in the City. Drawings of the apartment complex proposed by Reilly were also presented. The City's historic preservation officer appeared before the Board, explained her decision to deny the demolition request, and answered questions. Several individuals made presentations on Reilly's behalf, encouraging the Board to overturn the historic preservation officer's decision. Finally, individuals who opposed the demolition request, including other River Road Historic District residents, made presentations. At the conclusion of the hearing, the Board voted to uphold the historic preservation officer's decision to deny Reilly's demolition request.

Dissatisfied with the Board's decision, Reilly sought judicial review. Reilly filed a petition for a writ of certiorari in the trial court. Under the City's Unified Development Code, a demolition

---

[1]According to the procedure set out in the City's Unified Development Code, the historic preservation officer decides whether to grant or deny a demolition request in a historic district. San Antonio, Tex., Unified Development Code, § 35-451(d) (2006). Demolition requests are reviewed by the historic design and review commission, which makes a recommendation to the historic preservation officer. *See id.* Members of the commission represent a variety of disciplines and backgrounds, including but not limited to architecture, history, architectural history, archaeology, planning, landscape architecture, public art, art history, real estate/commercial development, economic development, law, banking, accounting, civil engineering, and urban design. *Id.* at § 35-803(c)(1). In this case, Reilly's demolition request was first considered by one of the commission's committees—the designation and demolition committee—which determined that demolition of the house was acceptable because of its loss of individual integrity and significance over time. Nevertheless, the commission eventually recommended to the historic preservation officer that Reilly's demolition request be denied.

request may be granted when "the owner has established by a preponderance of the evidence that the structure or property has undergone significant and irreversible changes which have caused it to lose historic, cultural, architectural, or archaeological significance." San Antonio, Tex., Unified Development Code, § 35-614 (2006). Reilly's petition alleged the Board's decision to deny his demolition request was illegal because he met his burden to establish the structure's loss of significance under section 35-614. No other ground for illegality was alleged in Reilly's petition. The Board filed a verified return showing the grounds for its decision. The Board's return consisted of the documents, photographs, maps, and drawings presented to the Board at the hearing and a transcript of the hearing before the Board.

The parties filed cross-motions for summary judgment on the only issue presented in Reilly's petition: whether the Board abused its discretion in denying Reilly's demolition request because Reilly met his burden to establish "loss of significance." Reilly's summary judgment motion argued the evidence presented to the Board established that 112 Lindell Place had lost its historic, cultural, architectural, or archaeological significance, and therefore, the Board clearly abused its discretion in denying his demolition request. The Board's summary judgment motion argued that Reilly failed to establish that its decision to deny Reilly's demolition request constituted a clear abuse of discretion. The trial court granted Reilly's summary judgment motion, and denied the Board's summary judgment motion. The Board then filed this appeal.

## JUDICIAL REVIEW

A decision of a board of adjustment may be challenged by filing a petition in a district or county court stating that the board's decision is illegal in whole or in part, and specifying the grounds of the illegality. TEX. LOC. GOV'T CODE ANN. § 211.011(a) (West 2008). When a petition is filed, the trial court may grant a writ of certiorari directed to the board to review the board's decision. TEX. LOC. GOV'T CODE ANN. § 211.011(c). The purpose of the writ of certiorari is to

require the board of adjustment to forward to the trial court the record of the particular decision being challenged. *Tellez v. City of Socorro*, 296 S.W.3d 645, 649 (Tex. App.—El Paso 2009, pet. denied). If the trial court grants the petition for writ of certiorari, the board must submit the record of its decision, otherwise known as a return. *Id*. The board's return must be verified and must concisely state any pertinent and material facts that show the grounds of the decision under appeal. TEX. LOC. GOV'T CODE ANN. § 211.011(d). The trial court may reverse or affirm, in whole or in part, or modify the decision that is appealed. TEX. LOC. GOV'T CODE ANN. § 211.011(f).

In an action challenging a decision by a board of adjustment, the trial court sits as a court of review, and the only question before it is the legality of the board's decision. *City of Dallas v. Vanesko*, 189 S.W.3d 769, 771 (Tex. 2006); *Town of Bartonville Planning and Zoning Bd. of Adjustments v. Bartonville Water Supply Corp.*, 410 S.W.3d 23, 29 (Tex. App.—San Antonio 2013, pet. denied). The board's decision is presumed to be legal, and the party attacking it bears the burden of establishing that the board clearly abused its discretion. *Tellez*, 296 S.W.3d at 649; *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.). To establish that the board's decision is illegal, the party attacking it must present a very clear showing of abuse of discretion. *Vanesko*, 189 S.W.3d at 771; *Bd. of Adjustment for the City of San Antonio v. Kennedy*, 410 S.W.3d 31, 34 (Tex. App.—San Antonio, pet. denied). A board abuses its discretion when it acts without reference to any guiding rules or principles, or when it clearly fails to analyze or apply the law correctly. *Vanesko*, 189 S.W.3d at 771; *Boyar*, 158 S.W.3d at 549.

In determining whether a board abused its discretion, the trial court may consider the board's verified return and any other evidence presented to the trial court. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(d), (e). As to a board's factual findings, the trial court may not substitute its judgment for the judgment of the board. *Vanesko*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 35. To prevail in the trial court, a party challenging a board's factual findings must establish that the

board could have reasonably made only one decision, and not the decision it made. *See Vanesko*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 35. It is not an abuse of discretion for the board to base its decision on conflicting evidence. *Kennedy*, 410 S.W.3d at 35. And, as long as some evidence of substantive and probative character supports the board's decision, there is no abuse of discretion. *Pick-N-Pull Auto Dismantlers, v. Zoning Bd. of Adjustment of the City of Fort Worth*, 45 S.W.3d 337, 340 (Tex. App.—Fort Worth 2001, pet. denied); *Sw. Paper Stock, Inc. v. Zoning Bd. of Adjustment of the City of Fort Worth*, 980 S.W.2d 802, 805-06 (Tex. App.—Fort Worth 1998, pet. denied).

## SUMMARY JUDGMENT STANDARD

The issue of whether a board of adjustment has clearly abused its discretion is a question of law appropriately determined by summary judgment. *Sw. Paper Stock, Inc.*, 980 S.W.2d at 806; *see Kennedy*, 410 S.W.3d at 35. To prevail on a summary judgment motion, a movant must meet his burden to establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). When, as here, both sides move for summary judgment, and the trial court grants one motion and denies the other, we consider all of the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *Kennedy*, 410 S.W.3d at 35.

## ARGUMENTS PRESENTED

In the instant appeal, the Board argues the trial court should have denied Reilly's summary judgment motion and granted its summary judgment motion. The Board emphasizes that, as the party attacking the legality of the Board's decision, the burden was on Reilly to establish in the trial court that the Board could have reached only one decision, and not the decision it made. The Board contends that Reilly failed to meet his summary judgment burden. In addition, the Board

argues that the summary judgment record establishes as a matter of law that it did not abuse its discretion in upholding the denial of Reilly's demolition request.

In response, Reilly maintains the trial court's summary judgment rulings were correct and should be upheld for two reasons. First, Reilly contends he established that the Board clearly abused its discretion in denying his demolition request, particularly in light of the fact that the evidence submitted in opposition to his demolition request was not relevant or competent. Second, Reilly contends the City's historic preservation officer should have granted his demolition request without a recommendation from the City's historic design and review commission and without any consideration by the Board. However, Reilly's second contention was not presented in his petition or his summary judgment motion. Because Reilly's second contention was not raised as a ground for illegality in the trial court, this contention is beyond the scope of this appeal. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(a) (providing that a board of adjustment's decision may be challenged by filing a petition in a district court stating that the board's decision is illegal in whole or in part, and specifying the grounds of the illegality); *see also* TEX. R. CIV. P. 166a(c) (requiring a summary judgment motion to present the specific grounds therefor).

## LOSS OF SIGNIFICANCE

In San Antonio, the demolition of structures in historic districts is governed by section 35-614 of the Unified Development Code. The purpose of section 35-614 is to "provide criteria to prevent unnecessary damage to the quality and character of the city's historic districts while, at the same time, balancing these interests against the property rights of landowners." San Antonio, Tex., Unified Development Code, § 35-614. Under section 35-614, an applicant may obtain a demolition certificate if he "demonstrates clear and convincing evidence supporting an unreasonable economic hardship … if the application for a certificate is disapproved." *Id.* at §35-614(a)(3). When an applicant fails to prove unreasonable economic hardship, he may provide additional

information regarding loss of significance in order to obtain a demolition certificate. *See id.* at § 35-614(c). The only ground for demolition at issue in this appeal is loss of significance.

Section 35-614 of the City's Unified Development Code sets out the procedure and criteria for establishing and evaluating loss of significance. Although section 35-614 expressly references the historic design and review commission, the Board applies the same criteria as the commission when it considers an appeal involving loss of significance. *See id.* at § 35-451(d)(3) ("In determining whether or not to grant the appeal, the board of adjustment shall consider the same factors as the commission, the report of the commission, and any other matters presented at the hearing on the appeal."). Section 35-614 provides, in relevant part:

> (c) **Loss of Significance.** When an applicant fails to prove economic hardship the applicant may provide to the historic and design review commission additional information which may show a loss of significance in regards to the subject of the application in order to receive historic and design review commission recommendation of approval of the demolition.
>
> *If, based on the evidence presented, the historic and design review commission finds that the structure is no longer historically, culturally, architecturally or archaeologically significant it may make a recommendation for approval of the demolition. In making this determination, the historic and design review commission must find that the owner has established by a preponderance of the evidence that the structure or property has undergone significant and irreversible changes which have caused it to lose the historic, cultural, architectural or archaeological significance, qualities or features which qualified the structure or property for such designation.* Additionally, the historic and design review commission must find that such changes were not caused directly or indirectly by the owner, and were not due to intentional or negligent destruction or a lack of maintenance rising to the level of a demolition by neglect.
>
> The historic and design review commission shall not consider or be persuaded to find loss of significance based on the presentation of circumstances or items that are not unique to the property in question (*i.e.* the current economic climate).
>
> For property located within a historic district, the historic design and review commission shall be guided in its decision by balancing the contribution of the property to the character for the historic district with the special merit of the proposed replacement project.

*See id.* at § 35-614 (emphasis added). Thus, in his appeal to the Board, Reilly had the burden to establish by a preponderance of the evidence that 112 Lindell Place had undergone significant and irreversible changes that caused it to lose historic, cultural, architectural, or archaeological significance.

## DISCUSSION

At the hearing before the board, Reilly's architectural expert, Irby Hightower, presented photographs of the house at 112 Lindell Place and diagrams of the lot and the surrounding neighborhood. He pointed out that there were multiple additions made to the house, roof lines that were problematic, and "overall it's a very sort of problematic structure in terms of just keeping rain water out of it." He noted that it's a "clay tile house, which has been [] roughly stuccoed over on the outside, plastered over on the inside." After showing the Board photographs of the house, Hightower stated, "[T]he number of alterations and additions made over time, the basic poor workmanship, the amount of alteration to the original structure, how it's really hard to determine what's original from what's added on, and why all of those things taken together really show that it has—if it ever were significant, it has lost its significance."

Next, Tom Brereton, who identified himself as a professional city planner but did not claim to have worked on this case, addressed the Board on Reilly's behalf. Brereton stated he owned 112 Lindell Place from 1976 to 1983. He had bought the house from an elderly couple, who were the first to convert the structure to a single-family house. According to Brereton, the couple told him the house was built to be a servant's quarters to support a larger house, but the larger house was never built. He discussed the floor plan of the house and its additions. Brereton told the Board, "[T]his building really has no significance. It has no architectural merit. It has no architectural integrity. . . . It certainly has no historic significance except perhaps as a curiosity." Additionally, Reilly's lawyer, Matthew Wymer, emphasized the City's initial findings that the structure no

longer possessed architectural integrity, design, materials, and workmanship due to extensive alterations and additions made over time. Wymer further contended that 112 Lindell Place did not contribute to the neighborhood.

City staff also addressed the Board. Andreina Davila-Quintero, the city planner who reviewed Reilly's demolition request, explained that the River Road historic district is mostly characterized by a distinctive collection of early twentieth century residences.[2] All structures within the district are considered to be contributing structures. The structure on the property at 112 Lindell is a 2400 square foot single-family residence built around 1948. Davila-Quintero went on to summarize the history of Reilly's demolition request. Initially, the design and demolition committee categorized the structure as non-contributing due to its loss of architectural integrity, and determined that demolition was acceptable. City staff concurred with the committee's findings. Later, however, the historic design and review commission held a hearing and determined it would recommend denial of the demolition application to the historic preservation officer. Consistent with the commission's recommendation, the historic preservation officer denied Reilly's demolition request, and Reilly appealed to the Board of Adjustment.

Next, the historic preservation officer, Shannon Peterson, addressed the Board. Peterson said that residents in the historic district voiced their opposition to Reilly's demolition request at a commission hearing, and this input was important to the commission's ultimate recommendation.

---

[2]The record shows the City Council approved the designation of the River Road Historic District on February 4, 2010. A "Statement of Significance" presented to the City Council on February 4, 2010, describes the neighborhood as follows: "The neighborhood is characterized by narrow, winding, tree-shaded streets and a collection of early 20th century residences, including [b]ungalows, Tudor [r]evival cottages, and minimal traditional houses." The statement also indicates that "River Road is eligible for a historic district designation" "based on" "[e]mbodiment of distinguishing characteristics of an architectural style;" "[h]istorical and architectural integrity of location, design, materials, [and] workmanship;" and "[i]ts character as an established and geographically definable neighborhood united by architectural style, plan, and development: early 20th century residential development."

Peterson explained that "part of the reason . . . you create a local historic district is to allow that opportunity for public input, which certainly weighed into the ultimate decision." Peterson stated that when the River Road historic district was created, each property was not expressly identified as contributing or non-contributing properties. Peterson further stated that there is an assumption that if a property is in a historic district, it is a contributing property unless and until it is determined otherwise.

Subsequently, Bebb Francis, a lawyer, made a presentation on behalf of some River Road residents. Francis informed the Board that ninety-three percent of the River Road residents opposed the demolition of the house at 112 Lindell Place. Francis emphasized that Reilly had to show that the structure had undergone significant and irreversible changes that have caused it to lose "historical, cultural—that's a key word—architectural or archaeological significance." Francis pointed out that even Brereton, a former owner of 112 Lindell Place who spoke in support of Reilly's demolition request, stated that he thought it was "kind of a funky, little house" when he bought it. Francis contended that River Road "is one of the last remaining unique environments in San Antonio." Francis also presented the minutes from the public meeting where the historic design and review commission decided to recommend denial of Reilly's demolition request. These minutes showed that one of the commissioners, who was a professional architect, "believed that the structure did not have [] great significance, unto itself, but in context of being a contributing structure within the neighborhood it does have importance." Similar observations were made by two other commissioners. One commissioner noted that the house was significant to the history of River Road and "is livable and [] unique to River Road." Another stated that there was more to the case than the structural significance of 112 Lindell Place, namely its cultural significance and its position in the historic district.

Thereafter, other members of the public, including River Road residents, addressed the Board. One resident noted the house was commonly known as "The Little Tile House" because it was constructed of D'Hanis red clay tile. This resident presented a 1948 newspaper ad listing the house for sale, which favorably portrayed the house as an "extra large, 2-bedroom house on a large corner lot [] ready for immediate occupancy." A woman whose sister had owned the house from 1983 to 1989 presented a letter from her sister, describing the house as a "peaceful place, and the neighborhood had a homey cottage personality . . . The outside structure was two layers of brick. So it was stucco and very energy efficient." Another resident said his family had lived in the River Road neighborhood for fifty years. He explained that because of its location on the roundabout, 112 Lindell Place plays a key role in shaping the character and streetscape cherished by neighborhood residents. He further noted that "the aggregate charm and beauty of the composite historic structures" was more important than the dollar value of any particular property. Another resident explained that 112 Lindell Place "is no different than any—the majority of other houses in the neighborhood. And if this house isn't significant, [if it] gets torn down, there's nothing to prevent other houses [in the district] from being torn down …." Finally, some evidence was presented about the very early history of the River Road area. A representative from a Native American organization presented several maps of the area dating from 1764 to 1913. He explained that 112 Lindell Place is situated near a pre-civil war road, and therefore, is historically and culturally significant and archaeologically sensitive.

On appeal, Reilly's primary argument is that the evidence presented by River Road residents was not relevant or competent because the residents were not experts. In essence, Reilly argues the Board was required to rely on the opinions of experts to evaluate loss of significance. We disagree. First, even though the Board is a quasi-judicial body, it is not required to apply strict rules of evidence. *Bd. of Adjustment of the City of San Antonio v. Willie*, 511 S.W.2d 591, 594

(Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.). Second, even under the rules of evidence, the residents' testimony was in all likelihood permissible. A non-expert witness may offer opinion testimony when it is rationally based on his perception and helpful to a clear understanding of his testimony or the determination of a fact issue. *See* TEX. R. EVID. 701 (providing that a non-expert's opinion testimony is limited to opinions that are rationally based on the witness's perceptions and helpful to a clear understanding of the witness's testimony or the determination of a fact issue). Finally, the City's Unified Development Code requires the historic preservation officer to ensure that demolition decisions are based on the Secretary of the Interior's standards and guidelines for archaeology and historic preservation. San Antonio, Tex., Unified Development Code, § 35-451(d)(2). The Secretary's guidelines emphasize the overall importance of public participation in the historic preservation process.[3] For these reasons, we are of the opinion that the Board properly considered the evidence presented by the River Road residents.

At the hearing before the Board, the onus was on Reilly to establish by a preponderance of the evidence that 112 Lindell Place had undergone significant and irreversible changes that caused it to lose historic, cultural, architectural, or archaeological significance. The evidence before the Board showed that the River Road neighborhood was established as a historic district because of its architecture, its history, and its culture. The unique nature of River Road housing and the configuration of the neighborhood itself were critical to its designation as a historic district. Reilly presented some evidence to the Board indicating that 112 Lindell Place had undergone a loss of architectural significance, but this evidence failed to address a loss of historical or cultural significance. On the other hand, the evidence presented by the City and River Road residents showed that 112 Lindell Place retained some architectural, historical, and cultural significance.

---

[3]"*Archaeology and Historic Preservation: Secretary of the Interior's Standards and Guidelines*," http://www.cr.nps.gov/local-law/arch_stnds_1.htm.

In the trial court, the burden was on Reilly to establish that the Board committed a clear abuse of discretion. In this context, Reilly was required to establish that the Board could have reasonably made only one decision, and not the decision it made. *See Vanesko*, 189 S.W.3d at 771; *Kennedy*, 410 S.W.3d at 35. However, based on the evidence presented, we cannot say that the Board had no choice but to find that Reilly established a loss of significance by the preponderance of the evidence. To the contrary, based on the evidence presented, the Board acted within its discretion in upholding the decision to deny Reilly's demolition request. As previously stated, "[a] board does not abuse its discretion 'if it bases its decision on conflicting evidence and some evidence supports its decision.'" *Kennedy*, 410 S.W.3d at 35 (quoting *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)). We, therefore, conclude that the trial court erred in granting Reilly's summary judgment motion, and in denying the Board's summary judgment motion.

## CONCLUSION

The trial court's judgment is reversed, and judgment is rendered affirming the decision of the Board of Adjustment.

Karen Angelini, Justice