**FIVE ACES/SA, LTD., Reilly Brothers Property Co., LLC, Asher Reilly, and City of San Antonio Board of Adjustment, Appellants**

v.

**RIVER ROAD NEIGHBORHOOD ASSOCIATION and James A. Cullum, Jr., Appellees**

No. 04-16-00781-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: July 12, 2017

APPELLANT ATTORNEY: S. Mark Murray, 10001 Reunion Place, Suite 640, San Antonio, TX 78216, Albert Lopez, 14310 Northbrook Dr., Suite 200, San Antonio, TX 78232-5049, Deborah Lynne Klein, City Hall–3rd Floor, PO Box 839966, San Antonio, TX 78283-3966.

APPELLEE ATTORNEY: Mark J. Cannan, Clemens & Spencer, P.C., 112 East Pecan Street, Suite 1300, San Antonio, TX 78205.

Sitting: Sandee Bryan Marion, Chief Justice, Rebeca C. Martinez, Justice, Irene Rios, Justice

## OPINION

Opinion by: Rebeca C. Martinez, Justice

This appeal arises out of a request by the owners of the residence and property located at 112 Lindell Place, which is within the River Road Historic District, for approval of their proposed project involving renovation of the historic residence and new construction of a six-unit apartment complex on the undeveloped portion of the property. The City of San Antonio's Historic and Design Review Commission ("HDRC") and the City's Board of Adjustment ("BOA") approved the project and issued a Certificate of Appropriateness. The River Road Neighborhood Association and James A. Cullum, Jr. (collectively, "RRNA") sought judicial review of the approval in district court, and obtained a summary judgment in their favor. The property owners and developers, Five Aces/SA, Ltd., Reilly Brothers Property Co., LLC, and Asher Reilly (collectively, "Reilly"), and the BOA now appeal the trial court's judgment reversing approval for the project and withdrawing the Certificate of Appropriateness. We reverse the trial court's judgment and render judgment instructing the BOA to re-issue its Certificate of Appropriateness for the project.

## FACTS AND PROCEDURAL HISTORY

The River Road Neighborhood Association ("RRNA") encompasses an historic neighborhood along the banks of the San Antonio River between Highway 281 and Brackenridge Golf Course. The neighborhood received its designation as a Historic District by the San Antonio City Council in 2010. Reilly purchased the property at 112 Lindell Place in 2009, before the historic designation. The property contains an open lot in the front and a 2,400 square foot single family residence at the back of the property.

### First Application (Demolition & New Construction)

In May 2011, Reilly filed an application to fully demolish the residence on the ground that the changes made to it had caused it to lose its historic significance. Reilly planned to construct a six-unit apartment complex in its place. The City of San Antonio's Historic Preservation Officer ("HPO") denied the demolition request for failure to comply with the requirements of section 35-614 of the City's Unified Development Code ("UDC") governing demolition applications. Reilly appealed the decision to the Board of Adjustment ("BOA"), which held a public hearing at which it received evidence in the form of photographs, diagrams, and testimony. The BOA upheld the HPO's denial of the demolition application. Reilly then sought judicial review of the BOA's decision in

district court. The trial court granted summary judgment for Reilly holding the BOA had abused its discretion in denying the demolition request. The BOA appealed the trial court's judgment to this Court, and we reversed the summary judgment and entered judgment affirming the BOA's decision denying the request for demolition of the residence at 112 Lindell Place. *See City of San Antonio Bd. of Adjustment v. Reilly*, 429 S.W.3d 707 (Tex. App.—San Antonio 2014, no pet.).

### Second Application (Renovation & New Construction)

In January 2015, Reilly filed a new application seeking approval to "renovate [the] existing rear structure [the residence] and add six units in a two story building" (the "Project"). The application was presented to the HDRC for conceptual approval and the proposed design and concerns of the neighborhood were discussed at meetings held on January 27, 2015 and February 4, 2015. At a third meeting held on March 24, 2015, the HDRC reviewed a modified site plan which addressed many of the neighborhood's concerns, including "preservation of a mature anacua tree, proposed parking and the proposed vehicular circulation." The Project received conceptual approval from the HDRC in April 2015.

In November 2015, the HPO recommended that the HDRC give final approval to the Project, and issued findings in support of her recommendation. With respect to the "Item 1" request to "rehabilitate the existing structure at 112 Lindell place,"[1] the HPO found that, "[t]he existing structure at 112 Lindell was constructed circa 1950 and includes additions that have been subsequently added and have been determined to be non-contributing based on physical and historical documentation."

Those additions were listed as "a rear addition on the east façade, a patio addition on the north façade, a consecutive front porch on both the west and north sides and a swimming pool located north of the patio addition." The findings noted that Reilly was proposing to "alter the existing structure by removing each of the previously noted non-contributing elements." In addition to recommending approval for removal of the non-contributing additions, the HPO also recommended approval for Reilly's proposal to (i) make repairs necessary to restore the façade of stucco covered masonry, stating it was consistent with the applicable guidelines, (ii) replace the existing shingle roof with a standing seam metal roof, stating the structure historically would not have had a metal roof but the use of a metal roof was appropriate in this setting, and (iii) preserve all existing window and door openings and replace original windows and doors that are no longer in place or are damaged beyond repair with those typical of the architectural style of the structure. Construing the work proposed under Item #1 as a "rehabilitation," the HDRC issued the Certificate of Appropriateness approving the Project on November 18, 2015.

The RRNA appealed the decision to the BOA, asserting that "the proposed work involves removal of one-third of the structure" and therefore constitutes a "demolition" under the UDC. RRNA stressed that no application for demolition was filed, and Reilly had presented no evidence of economic hardship or loss of significance as required to obtain approval for a demolition under the UDC. RRNA also argued that a separate application for a determination that any part of the structure was non-contributing was required under the

---

**1.** "Item 2" applied to the request to newly "construct a two story building housing six residential units" and is not relevant to this appeal.

UDC and not filed by Reilly. The BOA held a public hearing on January 11, 2016 and affirmed the issuance of the Certificate of Appropriateness.

The RRNA then sought judicial review of the BOA's decision in district court. The RRNA asserted in the trial court that the BOA had acted without reference to the guiding rules and principles governing its decision and had incorrectly analyzed and applied the law. Specifically, the RRNA's petition alleged that the approval of the Project improperly permitted "partial demolition of a structure that was the principle dwelling on the lot at 112 Lindell Place" without a separate demolition application and approval. In addition, the RRNA asserted that, to the extent the HPO had found parts of the residential structure to be "non-contributing," such finding was improper because a separate application for a "determination of non-contributing status" was required and had not been submitted. In essence, the RRNA's position in the trial court and on appeal in this Court is that separate applications for the "partial demolition" and for the determination of "non-contributing" status were required before the Certificate of Appropriateness for the Project could be legally issued. The trial court agreed with the RRNA and granted its motion for summary judgment, reversing the BOA's decision and withdrawing the Certificate of Appropriateness for the Project.

### TRIAL COURT'S REVERSAL OF BOA'S CERTIFICATE OF APPROPRIATENESS

Reilly and the BOA appeal the trial court's judgment, arguing that it erred in reversing approval for the Project because it was reviewed and approved as an "alteration, restoration and/or rehabilitation," which may include removal of later parts added to the historic structure.

Two standards of review are relevant to this appeal—the review standard applied by the trial court and the appellate review standard to be applied by this Court.

### Applicable Standards of Review

As noted, RRNA filed a petition in the trial court seeking judicial review of the BOA's decision approving the proposed Project. The judicial appeal process is through a petition for issuance of a writ of certiorari from the district court and, upon issuance of the writ, a verified return or response by the BOA stating "any pertinent and material facts that show the grounds of the decision under appeal." See TEX. LOC. GOV'T CODE ANN. § 211.011 (West 2016) (trial court may consider the BOA's return and any other evidence presented to the court); see also Reilly, 429 S.W.3d at 710 (purpose of writ of certiorari method of review is to require the BOA to forward the record of the zoning decision being challenged). The trial court sits only as a court of review of the BOA's decision, and the only question before the court is the legality of the BOA's order. City of Dallas v. Vanesko, 189 S.W.3d 769, 771 (Tex. 2006). The BOA's order is presumed to be legal, and the party challenging it has the burden to establish its illegality, which in this context, means a very clear showing that the BOA abused its discretion. Id.; City of Alamo Heights v. Boyar, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.). A board of adjustment abuses its discretion when it acts without reference to any guiding rules or principles, or when it clearly fails to analyze or apply the law correctly. Vanesko, 189 S.W.3d at 771. Here, the RRNA argued that the BOA misapplied the law, i.e., the applicable sections of the UDC; it did not challenge the factual findings of the BOA.

The issue of whether the BOA clearly abused its discretion is a question of law that is appropriately determined by

summary judgment. *Reilly*, 429 S.W.3d at 711. The summary judgment evidence before the trial court consisted of the pleadings on file and the BOA's verified return in response to the writ of certiorari which contained the authenticated record of the proceedings before the BOA, including its official minutes and the transcript of the hearing. The trial court also took judicial notice of the relevant UDC provisions.

■ On appeal, this Court reviews the trial court's grant of summary judgment *de novo. Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party is entitled to a traditional summary judgment if it shows that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When, as here, competing summary judgment motions are filed on the same issue, and the trial court grants one motion and denies the other, the reviewing court considers all the summary judgment evidence, determines all questions presented, and renders the judgment the trial court should have rendered. *Reilly*, 429 S.W.3d at 711.

### Was the BOA's Order Approving the Project Illegal (i.e., a Misapplication of the Law)?

On appeal, Reilly argues the trial court erred in granting summary judgment for the RRNA because the BOA's approval of the Certificate of Appropriateness for the proposed Project was based on a correct application of the governing UDC provisions, sections 35-451 and 35-610. Reilly asserts that, because the Project requires only a partial removal of portions of the structure that are limited to the non-historic, "noncontributing" additions made to the original historic residence, it is considered a "restoration" or "rehabilitation" and no separate application for demolition was required. Reilly points out that the UDC definitions of the terms "restoration" and "rehabilitation" contemplate the removal of added features or structures that do not accurately reflect the original form and details of the building. In support, Reilly refers to our prior opinion discussing the architect's testimony at the first BOA hearing, stating that, "there were multiple additions made to the house, roof lines that were problematic ... 'in terms of just keeping rain water out of it.'" *See id.* at 713. The architect further stated, "it's a 'clay tile house, which has been [ ] roughly stuccoed over on the outside,'" and given "'the number of alterations and additions made over time, the basic poor workmanship, the amount of alteration to the original structure, [ ] it's really hard to determine what's original from what's added on....'" *See id.* Reilly also asserts the HPO was within her authority to determine that the portions to be removed were "noncontributing" to the historic significance of the residence as part of the single application for "rehabilitation and new construction." Finally, Reilly points out that the BOA found at its November 18, 2015 hearing that the proposed project had been adjusted to meet the original concerns of the RRNA.

In response, RRNA argues in support of the trial court's judgment that the BOA's approval of the project was illegal, i.e., an abuse of discretion, because the proposed work includes "the removal of approximately one-third of the existing rear structure," i.e., the residence. RRNA argues this work constitutes a "partial removal of a structure" or "partial razing" within the definition of a "demolition" under the UDC; therefore, a separate application for demolition was required, but was not submitted by Reilly. RRNA also argues a separate application was required before the HPO could make a determination that

any portion of the structure was "noncontributing" to its historic significance. The RRNA asserts that Reilly is attempting to "make an end-run" around the demolition requirements, which it already failed to meet, by "labeling the work as something else." [2]

The RRNA also argues that Reilly never filed an application for a "restoration" or "rehabilitation" because Reilly's application characterized the work on the existing residence as a "renovation." Reilly concedes that the term "renovation" is not used in the UDC, but argues the substance of the proposed work fits within UDC sections 35-451 and 35-610 which apply to a proposed "alteration, restoration, or rehabilitation" of an existing structure, as well as to "new construction." The written findings of the HPO and BOA show that both construed Reilly's application as one for "rehabilitation" and "new construction" and applied those two sections in their review of the Project application.

### Applicable UDC Provisions

Section 35-451 lists eleven types of projects in a Historic District that require a Certificate of Appropriateness, including applications for "alteration, additions, restoration, and rehabilitation," and "demolition."

### "Demolition"

Section 35-A101 of the UDC defines "demolition" as "the complete or partial removal of a structure from a site" and "any act or process that destroys or razes in whole or in part ... a building, object, site or structure ... located within a historic district." Section 35-614 governs applications for approval of "demolition" of "property located in a historic district and contributing to the district." It requires

the applicant to demonstrate "clear and convincing evidence supporting an unreasonable economic hardship [if application denied] ... or additional information regarding loss of [historic] significance" of the property. Reilly was unable to meet its burden under that test in its first application for a full demolition of the residence.

Section 35-614(f) provides an exception by authorizing the HPO to approve an application for demolition of "non-contributing minor outbuildings ... such as carports, detached garages, sheds, and greenhouses" that the HPO determines to not possess historical significance.

### "Alteration, Restoration, and Rehabilitation"

Section 35-A101 of the UDC defines "restoration" as "the act or process of accurately recovering the form and details of a building, object, site or structure ... by means of the removal of later work" or "by means of the removal of features from other periods in its history." The definition also includes limited upgrading of mechanical, electrical, and plumbing systems to be code-compliant. "Rehabilitation" is defined in that section as "the act or process of returning a building, object, site, or structure to a state of utility through repair, remodeling, or alteration that makes possible an efficient contemporary use while preserving those portions or features of the ... structure that are significant to its historical ... value." Finally, "alteration" is defined as "any change affecting the exterior appearance of an existing structure or improvement by additions, reconstruction, remodeling, or maintenance" or "any structural changes involving changes in form, texture, materials, or color," or "a change or rearrangement in the structural parts" of a building.

---

**2.** In its brief, the RRNA clarifies that it is not asserting that this Court's prior opinion has

any res judicata effect.

Section 35-610 provides that in considering whether to approve an application for "restoration, rehabilitation, or alteration," the HDRC shall be guided by the Historic Design Guidelines and UDC, in addition to other stated standards/guidelines, and that "[a]pplications should be approved if in general conformance with the guidelines." The section goes on to state, however, that applications may be denied by the HPO based on "any inconsistency or nonconformance with the approved guidelines."

Section 35-611 provides an exception to the review standard set forth in section 35-610 for "restorations, rehabilitations, or alterations," and gives the HPO discretion to approve applications for "minor alterations, additions, repairs, or maintenance," including demolition of "noncontributing structures located in [a] historic district that are made of non-historic materials" as well as "non-historic additions" and "non-historic accessory structures" that are made of non-historic materials.

Finally, Section 35-619 of the UDC, titled "Noncontributing Structures," states that requests for determination of whether an "object, building, structure or sign are contributing or non-contributing to a ... historic district shall be made on an application obtained from the [HPO]" and the HPO must review the application and make a determination within 30 days.

*Statutory Analysis*

 In construing the statutory language of the UDC sections *de novo*, we apply the usual statutory construction principles, and begin by giving the text its plain meaning within the context of the entire statute. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 59 (Tex. 2015). The BOA's appellant's brief sets forth the applicable provisions of the UDC in detail and provides its interpreta-

tion of the sections and their interplay within the UDC. As the agency charged with administration of those provisions, the interpretation of the BOA is entitled to deference so long as its construction is reasonable and does not contradict the statute's plain language. *R.R. Comm'n of Tex.*, 336 S.W.3d at 625. In its reply brief, the BOA stresses that the UDC definitions of restoration and rehabilitation "contemplate structural changes to historic buildings by removal of later work."

In approving issuance of the Certificate of Appropriateness, the BOA made findings that stated the HPO's recommendation and the HDRC's action in approving the Project were consistent with the guidelines and with the handling of requests for similar work. The BOA stated, "in 2015 alone, the [Office of Historic Preservation] reviewed approximately ten ... applications in which the removal of a non-contributing addition was part of the request for rehabilitation of a designated structure. In each instance, [Office of Historic Preservation] staff recommended the removal of these additions and the HDRC approved these requests as part of the overall rehabilitation." The BOA went on to conclude, "[t]hese are not considered as separate demolition requests." The BOA acknowledged the RRNA's assertion that a separate demolition application was required for removal of the additions, but stated, "[t]his is not the case ... UDC Section 35-611[ ] gives authority for administrative approval of a number of types of work categorized as demolition. None of these require a separate demolition application or an argument of economic hardship or loss of significance." With respect to the RRNA's argument that a separate application for noncontributing status was mandatory, the BOA stated, "[t]his is also not the case. The UDC does not require an application for staff to find a portion of a

structure non-contributing during the course of the review of a project. This is a task performed routinely by staff in reviewing HDRC applications and proposed work."

Looking at the statutory text, we agree that the plain meaning of the terms "restoration," "rehabilitation," and "alteration," as defined in the UDC, do encompass making structural changes to the existing historic structure, including removals of non-historic and noncontributing additions, *as part of* the overall restoration or rehabilitation process. The definition of "restoration" expressly includes the actions of "remov[ing] later work" and "remov[ing] features from other periods in its history" as part of the process of "accurately recovering the form and details" of the building. The definition of "rehabilitation" similarly includes "remodeling or alteration" of a building "while preserving those portions or features ... that are significant to its historical ... value." On the other hand, the definition of "demolition" refers to the "complete or partial removal .... from a site" and encompasses any action that "destroys" or "razes in whole or in part." Those actions connote removal as an end in itself, not as part of the building's restoration or rehabilitation. Indeed, the first sentence of section 35-614 provides insight into the meaning of a "demolition," by stating that "demolition of a historic landmark constitutes an irreplaceable loss to the quality and character of the City of San Antonio."

In addition, as the BOA points out, UDC section 35A.101(a) provides that the statutory text controls over mere captions and titles, and that any undefined words, phrases or terms shall be given their "usual and customary meanings except where the context clearly indicates a different meaning." We conclude the BOA did not misapply the law or otherwise abuse its

discretion in finding the HPO correctly considered the substance of the proposed work and correctly construed Reilly's application for a "renovation" as a "restoration," "rehabilitation," and/or "alteration" under sections 35-610 and 35-611, rather than as a "demolition." RRNA's focus on the definition of "demolition" in isolation does not comport with statutory construction principles which require interpreting a provision within the larger context, and gives no weight to the nature and substance of the actual work Reilly proposed. For the same reason, we conclude that a separate application for "noncontributing status" under 35-619 was not required because it was appropriate to review the entire scope of the work proposed for the Project under a single application for "restoration, rehabilitation, or alteration, and new construction."

Finally, in her written findings under Item #1(e), the HPO recited that, "[n]oncontributing elements do not require proof of economic hardship based on UDC Section 35-614(f)." RRNA states that section 35-614(f) clearly does not apply to the proposed Project because it is limited to demolition of "non-contributing minor outbuildings" such as "carports, detached garages, sheds and greenhouses" and none exist on the property at 112 Lindell Place. RRNA points to this statement as evidence that the HPO did not follow the applicable guidelines and misapplied the law, and that the BOA, in turn, abused its discretion in approving her issuance of the Certificate of Appropriateness. We disagree that this single sentence undermines the substance of the HPO's review and approval. In its findings, the BOA rejected RRNA's argument that the HPO misapproved removal of the additions on the basis of them being "minor outbuildings" under Section 35-614(f), relying instead on the HPO's substantive findings in subsections Item #1(e) through (h) as

the basis for her approval. The BOA stressed, in particular, the HPO's finding in (e) that "the portions for removal were found to be later additions to the historic structure." In its own findings, the BOA followed up on the (e) finding and held that section 35-611 applies to the Project. Under section 35-611, the HPO was authorized to approve demolition of "non-historic additions" and "non-historic accessory structures" under the single Project application, without a separate demolition application and review process. This interpretation comports with the plain statutory language and does not constitute a misapplication of the law.

### Conclusion

Based on the plain statutory language of the applicable UDC sections, read in context of the statute as a whole, and the summary judgment record showing the substance of the work to be performed and the agency's findings, we hold that the Certificate of Appropriateness was properly issued for the Project as an "alteration, restoration, or rehabilitation" and new "addition" under sections 35-610 and 35-611, without the need for separate applications for "demolition" and determination of "non-contributing status." Therefore, we reverse the trial court's summary judgment and render judgment instructing the BOA to re-issue the Certificate of Appropriateness for the Project.